Raymond W.
SCHUENEMANN, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–2710, A–2736.

Court of Appeals of Alaska.

Nov. 3, 1989.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.

Tonja Woelber, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

Raymond W. Schuenemann pled no contest and was convicted of five counts of sexual assault in the first degree, AS 11.-41.410(a)(1), two counts of attempted sexual assault in the first degree, AS 11.31.-100(a) and AS 11.41.410(a)(2), and three counts of burglary in the first degree, AS 11.46.300(a). Superior Court Judge Jay Hodges imposed a composite sentence of sixty-nine years of imprisonment. In entering his plea, Schuenemann preserved his right to appeal the denial of his motion to suppress his confession. He also appeals his sentence. We affirm.

Schuenemann moved to Alaska in 1982. He was arrested in Anchorage for indecent exposure in 1983. He was sentenced to six months, with six months suspended, and received professional counseling from a doctor at Langdon Clinic. In 1985, Schuenemann was living in Chugiak with his wife and newborn son and was working as a civilian employee on Elmendorf Air Force Base.

Beginning in March 1985, and ending in April 1987, Schuenemann raped two women and attempted to rape two others. All of the women were strangers to Schuenemann and lived in Anchorage. In each case, Schuenemann would break into the woman's home in the early morning hours, forcibly overcome the woman's resistance, and sexually attack her.

In 1987, Schuenemann was sent to Fairbanks by his employer to work on a temporary construction project. His family stayed in Chugiak. Schuenemann raped his first Fairbanks victim on July 16, 1987. On August 2nd, he raped another woman. On August 5th or 6th, he attempted to rape a third woman. On August 14th, he attempted to rape a fourth woman. On August 18th, he raped his fifth Fairbanks victim. Three of these sexual assaults took place at Wedgewood Manor, a housing complex in Fairbanks.

The police staked out Wedgewood Manor on August 26, 1987. At 1:00 a.m., the police spotted a large man fitting the description of the rapist sneaking around on the second floor balcony of the P Building of Wedgewood Manor. When the police yelled for Schuenemann to stop, he threw some objects into the bushes and tried to run, but he was soon apprehended. The items thrown by Schuenemann were retrieved: a flashlight and a key to room P–11, Wedgewood Manor. One of the prior rapes had occurred in room P–11.

The police took Schuenemann to police headquarters, read him his *Miranda* rights, and questioned him. He was taken to an interview room at the station. The police gave Schuenemann a soda which he drank throughout the interview. The police questioned him about his activities of that night and his connection with reported rapes in the area. Schuenemann confessed to all of the Fairbanks assaults as well as to the four Anchorage assaults.

Schuenemann moved to suppress his confessions on the grounds that they were not given voluntarily. He argues that he received an implied promise of leniency from his interrogators in exchange for his confessions. He claims these inducements overbore his will to resist and resulted in confessions not freely self-determined.

Schuenemann argues that the police minimized the moral seriousness of the offenses and assured him that they viewed his problem as a medical one. Schuenemann claims the police induced him to confess by assuring him that he had only a medical problem, not a criminal one.

Although the police did make statements to Schuenemann recognizing that his problem was medical, they did not imply that he faced no criminal charges. In fact, two investigators who talked to him guaranteed Schuenemann that he would go to trial for sexual assault. And, although the third investigator emphasized that Schuenemann's problem was medical, both the investigator and Schuenemann at one point agreed that there was a criminal problem, too. In addition, Schuenemann had previously spent eight years in a Texas prison

for committing a sexual assault. Schuenemann, from experience, knew that he faced substantial criminal charges.

The standard for reviewing whether a confession is involuntary because it was induced by promises or inducement by the police is set forth in *United States v. Ferrara*, 377 F.2d 16, 17 (2d Cir.1967), *cert. denied* 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967) (citations omitted, brackets in original):

> The Supreme Court has consistently made clear that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of "law enforcement officers was such as to overbear [the defendant's] will to resist and bring about confessions not freely self determined."

*See Stobaugh v. State*, 614 P.2d 767, 772–73 (Alaska 1980); *Harris v. State*, 678 P.2d 397, 405 (Alaska App.1984), *rev'd on other grounds sub nom Stephan v. State*, 705 P.2d 410 (Alaska 1985) *opinion issued at* 711 P.2d 1156 (Alaska 1985). In *Plant v. State*, 724 P.2d 536, 541 (Alaska App.1986) (citations omitted), we stated: "In determining whether a confession is voluntary, this court makes an independent determination based on the entire record.... The factual findings, however, will only be reversed if clearly erroneous."

■ We have reviewed the videotape of the interrogation. During the interrogation, the police were in plain clothes and were unarmed. For the most part, Schuenemann faced one investigator at a time. Schuenemann addressed the investigators by their first names and had been provided with a soft drink. He was not restrained and was allowed to move around in the interrogation room. Although the police emphasized Schuenemann's medical problem, they did not, even indirectly, tell him that he did not face criminal charges. We find that under the totality of the circumstances, the police did not overbear Schuenemann's will and his confession was voluntary. The trial court did not err in denying Schuenemann's suppression motion.

Schuenemann next raises several issues concerning his sentence. Schuenemann pled no contest to twelve felony offenses. He had previously been convicted for burglary in Texas, so he was a second felony offender for presumptive sentencing purposes. Sentencing Judge Jay Hodges found two aggravating factors: that Schuenemann used a dangerous weapon during two of the Fairbanks offenses, AS 12.55.155(c)(4); and that Schuenemann had a criminal history similar in nature to the offenses for which he was being sentenced, AS 12.55.155(c)(21). Schuenemann does not contest the applicability of these aggravating factors. However he contends that Judge Hodges erred in rejecting two mitigating factors which Schuenemann proposed and in refusing to refer Schuenemann's case to the three-judge panel.

■ Schuenemann argues that the court erred in rejecting the mitigator that his three burglary convictions were among the least serious conduct included in the definition of the offenses. AS 12.55.155(d)(9). He argues that the burglaries were committed only to obtain keys. Judge Hodges found that the keys taken during at least one burglary were later used to commit a sexual assault. He also found that Schuenemann's intent in committing all three burglaries, as shown by his *modus operandi*, was to facilitate sexual assaults. He therefore rejected the proposed mitigating factor. Schuenemann had the burden of proving the applicability of a mitigating factor by clear and convincing evidence. AS 12.55.155(f). We conclude that Judge Hodges did not err in rejecting this mitigating factor given his findings, which are supported by the record, that Schuenemann committed the burglaries to facilitate sexual assaults.

■ Schuenemann also argues that Judge Hodges should not have rejected the mitigating factor that Schuenemann committed all the offenses under some degree of compulsion "insufficient to constitute a complete defense, but which significantly affected the defendant's conduct." AS 12.55.155(d)(3). In *Bynum v. State*, 708 P.2d 1293, 1294 (Alaska App.1985), we said: "[F]or a defendant to establish the mitigating factor that he acted under compulsion,

the compulsion must be of a sufficiently extraordinary nature that it approaches being a defense to the crime." We found in Bynum's case that the compulsion was the sort which would be ordinary and expected in the commission of Bynum's offense. *Id.*

Schuenemann had the burden of proving with clear and convincing evidence that his compulsion was of a sufficiently extraordinary nature that it approached being a defense to the crime. Judge Hodges could properly find that Schuenemann's evidence of compulsion was no more persuasive than was Bynum's, and that Schuenemann's compulsion was ordinary and the sort expected in the commission of sexual assaults. We conclude that Judge Hodges did not err in rejecting this mitigator.

■ Schuenemann next argues that his case should have been referred to a three-judge panel. We find this argument meritless. Schuenemann was a forty-year-old, second felony offender who was facing sentencing on several serious felonies. The trial court, had it chosen to do so, could have imposed a minimum sentence of fifteen years imprisonment by making all of Schuenemann's sentences concurrent. There was no reason for the court to refer this case to the three-judge panel. Judge Hodges did not err in refusing to refer this case to the three-judge panel.

■ Schuenemann argues that his sentence is excessive. Schuenemann's sentence of sixty-nine years of imprisonment was an extremely high sentence. Schuenemann points out that neither this court nor the supreme court has approved a sentence of this length for a crime other than murder.

In sentencing Schuenemann, Judge Hodges recognized that Schuenemann had several points in his favor. He noted Schuenemann's exemplary work history and exemplary military record. However, Judge Hodges pointed out that Schuenemann was forty-years-old at the time of sentencing and that the record established that Schuenemann has a long history of sexually deviant behavior which has culminated in serious criminal behavior.

According to the psychological reports, Schuenemann recalled enjoying exposing himself as a young child. Later, at age thirteen, he exposed himself in public and was picked up by the police. A short time after this, he was picked up by the police for indecent exposure in Texas. From age fourteen through approximately sixteen, Schuenemann began burglarizing houses at night because it was a way of exposing himself to the sleeping occupants of those houses. In 1966, he was arrested for one of these incidents and charged with burglary of a private residence in the nighttime. He was sixteen at the time of this offense. Schuenemann was given a suspended imposition of sentence. He successfully completed two years of probation and the case was dismissed.

Schuenemann's most serious prior conviction was for burglary with the intent to commit rape. It appears that the charges involved a completed rape. Schuenemann was originally sentenced in 1971 to a term of ninety-nine years of imprisonment on this charge. However, the case was reversed on appeal, and Schuenemann was ultimately convicted of burglary and sentenced to sixteen years. Schuenemann was paroled after serving eight years and was discharged from parole in 1980.

Schuenemann also has several convictions for incidents involving indecent exposure. Schuenemann received a letter of reprimand for a misdemeanor conviction for disorderly conduct for an incident of indecent exposure which occurred in 1979 while he was on parole. In 1981, Schuenemann was convicted of lewd conduct in Utah. He was also convicted of indecent exposure in Anchorage in 1983.

In his psychological examinations and his statements to the police, Schuenemann admitted numerous sexual offenses against women, including numerous rapes and attempted rapes which did not result in criminal penalties. Although the psychological reports indicate that Schuenemann is intelligent, has some insight into his problem, and desires to change his behavior, the reports also show a long term pattern of sexual deviancy which is compulsive and which Schuenemann has not been able to change.

Schuenemann's current offenses also illustrate Judge Hodges' conclusion that he was a particularly dangerous offender. Schuenemann was convicted of twelve felonies, including five first-degree sexual assaults, four attempted sexual assaults, and three first-degree burglaries. Schuenemann frequently broke into residences to commit his sexual assaults and frequently threatened to kill or stab his victims. In three of the incidents involving sexual assault, Schuenemann made threats to his victims that he would kill their young children who were present in the residence.

Schuenemann has cited several of our previous cases, arguing that his sentence is excessive in comparison to those cases. In *Nix v. State*, 653 P.2d 1093, 1100–01 (Alaska App.1982), we limited Nix's sentence to forty years of imprisonment for a series of several sexual assaults. Nix was a third felony offender with an extensive criminal record. However, Nix was only twenty-four years old at the time of his offenses. Although he had established an extensive criminal record, in Nix's case it was not as clear that he had established a lengthy, compulsive, and apparently untreatable pattern of sexually assaultive behavior.

In *Murray v. State*, 770 P.2d 1131, 1139–1143 (Alaska App.1989), Murray was on parole for a prior conviction of murder in the second degree for which he had served five years when he was convicted of two counts of sexual abuse of a minor in the first degree. In *Murray*, we placed great emphasis on Murray's serious prior conviction, the fact that he was on parole, and the presence of six aggravating factors which pertained to his sexual abuse of a minor convictions. We found that the sixty-year sentence imposed by the trial judge was excessive and ordered Murray's sentenced reduced to sixty years with ten years suspended. *Id.* at 1144. Murray was forty-one, approximately Schuenemann's age. His prior conviction was for a more serious offense. However, Schuenemann's current offenses involved numerous victims. Murray's offenses involved two victims. Although Murray's prior offense was more serious, Schuenemann's prior offense, for which he served a substantial sentence of eight years, involved a similar crime. Schuenemann's criminal history thus seems to establish an ingrained, compulsive criminal pattern.

In *Goolsby v. State*, 739 P.2d 788 (Alaska App.1987), Goolsby was sentenced for three counts of sexual assault in the first degree and one count of attempted sexual assault. We found a sentence of thirty-seven years with twelve years suspended not to be clearly mistaken. Goolsby had no prior convictions and had a good military and employment record. Goolsby did use a knife in the sexual assaults; in that respect his offenses were similar to Schuenemann's, although there were not as many incidents. However, Goolsby's lack of prior convictions and the lack of an established pattern of sexually deviant behavior make his case substantially more favorable than Schuenemann's.

Judge Hodges concluded that based upon the seriousness of Schuenemann's current offenses and his prior criminal history, Schuenemann should be incarcerated for the rest of his life. In *Contreras v. State*, 767 P.2d 1169, 1175 (Alaska App.1989), we stated:

> [W]e are satisfied that this is one of the very few cases in which the trial court could determine, based on a defendant's past proven criminal record, that he should be under correctional supervision for the remainder of his life. When a trial judge finds, based upon substantial evidence, that a person will remain a danger to the community for the remainder of his or her life, a sentence of ninety-seven years with thirty-two years suspended is not clearly mistaken.

We conclude that Schuenemann's case, like that of Contreras', is one of those rare cases where the trial court is not clearly mistaken in imposing a sentence which essentially requires the defendant to be under correctional supervision for the remainder of his life.

The sentence is therefore AFFIRMED.