Robert R. ROSS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4786.

Court of Appeals of Alaska.

July 8, 1994.

Linda K. Wilson, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Shannon D. Hanley, Asst. Dist. Atty., Edward E. McNally, Dist. Atty., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

## OPINION

BRYNER, Chief Judge.

Robert R. Ross was convicted by a jury of one count of kidnapping and five counts of first-degree sexual assault. He later entered a plea of no contest to a separate charge of second-degree sexual assault. Superior Court Judge Peter A. Michalski sentenced Ross to consecutive sentences totalling eighty-four years' imprisonment.

In *Ross v. State*, 836 P.2d 378 (Alaska App.1992), this court upheld Ross' convictions but remanded his case for resentencing. On remand, Judge Michalski reimposed the original eighty-four-year composite term. Ross again appeals, contending that his sentence is excessive. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

We addressed the facts surrounding Ross' convictions in our original opinion:

Ross' convictions stem from two incidents that occurred approximately a week apart. On January 30, 1987, Ross met V.B. in a downtown Anchorage bar; at Ross' invitation, V.B. and several friends accompanied Ross to his nearby house for some beer. There, after V.B.'s friends left, Ross physically and sexually assaulted V.B.

On February 6, 1987, Ross approached S.A. in a downtown Anchorage bar, grabbed her arm, and commanded her to do as she was told. He forced S.A. to walk to his house. There, Ross held S.A. hostage for approximately eight hours, repeatedly subjecting her to physical and sexual assaults. In the early morning hours of February 7, S.A. managed to escape Ross' house and ran to the house of an acquaintance[.]

*Ross*, 836 P.2d at 379.

At the time of these offenses, Ross was thirty-four years old.[1] We described Ross' background and his sentences for these offenses as follows:

Ross had one prior felony: a 1982 conviction for first-degree sexual assault that involved circumstances similar to the assaults Ross committed against V.B. and S.A. For the earlier crime, Ross received an eight-year term; he was on parole for that offense when he committed the current offenses.

For the incident involving S.A., Ross was convicted of kidnapping and five counts of first-degree sexual assault. Kidnapping, an unclassified felony, is punishable by a maximum term of 99 years and a minimum of five; the crime is not subject to presumptive sentencing. AS 11.41.-300(c); AS 12.55.125(b). First-degree sexual assault, also an unclassified felony, is punishable by a maximum of thirty years; as a second felony offender, Ross was subject to presumptive terms of fifteen years for each of his first-degree sexual assault convictions. AS 11.41.410(b); AS 12.55.-125(i)(3).

For the incident involving V.B., Ross was convicted of one count of second-degree sexual assault, a class B felony. He was subject to a four-year presumptive term for that offense. AS 11.41.420(b); AS 12.55.125(d).

. . . .

In imposing sentence, Judge Michalski concluded that Ross was an extremely dangerous offender who had little chance for

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. In our previous opinion, we stated Ross' age to be 35 at the time of his offenses. *Ross v. State*, 836 P.2d at 382. However, the presentence report indicates Ross' date of birth to be January 17, 1953, which would place Ross several weeks past his thirty-fourth birthday when he committed these offenses.

rehabilitation. The judge thus stressed the need to isolate Ross for the protection of the community. Judge Michalski sentenced Ross to fifty years for kidnapping. The judge imposed fifteen years for each count of first-degree sexual assault, making the two counts involving anal penetration concurrent to each other and the three counts involving vaginal penetration concurrent to each other, but ordering each group of concurrent sentences to be consecutive to the other group, as well as to the kidnapping. This yielded a total of eighty years' imprisonment for the offenses involving S.A.

For the second-degree sexual assault conviction involving V.B., Judge Michalski imposed an additional consecutive term of four years. Relying on Ross' dangerousness and the need to isolate him for the maximum possible time, Judge Michalski ordered that Ross' eligibility for discretionary parole be restricted on the kidnapping charge. Ross thus received a composite term of eighty-four years without possibility of parole.

*Id.* at 382–83.

In deciding to remand Ross' case for resentencing, this court relied on *Williams v. State,* 800 P.2d 955 (Alaska App.1990) (*Williams I*), modified on reconsideration, 809 P.2d 931 (Alaska App.1991) (*Williams II*). In *Williams I,* we conducted an extensive review of past sentencing decisions involving offenders simultaneously convicted of rape—or first-degree sexual assault—and kidnapping. Our opinion in *Ross* summarized the review of the case law that we conducted in *Williams I* as follows:

> Our review indicated "a fair degree of uniformity" in sentencing in such cases. *Williams,* 800 P.2d at 958. We noted that the cases fell into three benchmark categories. The initial category consisted of first felony offenders. For offenders in this category, we observed that sentences exceeding twenty years of unsuspended time had rarely been approved. *Id.* at 959. The second benchmark category included kidnap/rape cases involving offenders who had one or more prior felony convictions but whose criminal history was not suffi-

ciently extensive to place them in the dangerous offender category. As to this category, we found that "precedents firmly establish thirty years as the maximum composite sentence that should ordinarily be imposed. . . ." *Id.* In the third benchmark category, we found "a handful of decisions" approving composite sentences of more than thirty years of unsuspended time; we observed that "[w]ithout exception, those cases have involved kidnappings of prolonged duration or offenders whose prior criminal histories established them as persistent, violent criminals." *Id.* at 960.

*Ross,* 836 P.2d at 383.

Our opinion in *Ross* then emphasized the significance of the dual statutory sentencing goals of promoting uniformity and eliminating unjustified disparity:

> *Williams [II]* . . . reaffirmed the fundamental need for consideration of historical sentencing practices—as reflected in benchmark sentences—in the sentencing process; . . . this need springs from the legislature's concern with promoting sentencing uniformity and eliminating unjustified disparity—a concern the legislature expressed with "unmistakable clarity" in AS 12.55.005(1), which requires the sentencing court to consider "the seriousness of the defendant's present offense in relation to other offenses." [In *Williams II*] we concluded:
>
> > At a minimum, . . . the principle of reasonable sentencing uniformity requires a sentencing judge who decides that an offender deserves a sentence which is significantly different from sentences previously given to similarly situated offenders to expressly find some legitimate basis for the difference—some basis related to 'legally relevant sentencing criteria.' That basis should be spelled out on the sentencing record, so that the defendant and a reviewing court can understand the reasons for the disparity.

*Ross,* 836 P.2d at 383–84.

We went on in *Ross* to compare Ross' eighty-four-year composite term to sentences received by similarly situated offenders convicted of similar crimes. We found that Ross' sentence was "seemingly unprecedent-

ed" and "vastly exceed[ed]" the sentencing benchmark applicable to his case.[2]

Because Judge Michalski had "failed to discuss the seriousness of Ross' conduct in relation to other similarly situated offenders" and "made no findings to explain the apparent disparity between Ross' composite sentence and sentences previously given to similarly situated offenders," we remanded the case for additional findings in light of the two *Williams* decisions:

> Here, the sentencing court's failure to make express findings concerning the seriousness of Ross' offenses in relation to other similar cases and the court's consequent failure to explain the apparent disparity of the sentence it elected to impose preclude meaningful appellate review. We must therefore remand this case for resentencing in light of *Williams*. On remand, the sentencing court should make express findings in conformity herewith.

*Ross*, 836 P.2d at 384–85.

On remand, Judge Michalski compared Ross' case to cases this court discussed in *Williams I*. The judge found Ross' case distinguishable from those of other second offenders convicted in kidnap/rape cases because of the nature and character of Ross' past and current criminality—that is, because Ross' prior felony conviction was also for first-degree sexual assault and because Ross' past and current offenses revealed a seemingly escalating pattern of violence. Reiterating the view that Ross was a remorseless and extremely dangerous offender, Judge Michalski determined that the original

sentence was appropriate, even though the sentence exceeded the applicable *Williams I* benchmark. Judge Michalski thus resentenced Ross to the same eighty-four-year composite term that Ross had originally received but eliminated a parole restriction that would have made Ross ineligible for discretionary release for the first fifty years of his sentence.

## DISCUSSION

■ Our function on appeal is to conduct an independent review of the entire sentencing record and decide whether Ross' sentence is clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). In applying this standard, we use the *Williams* benchmarks for kidnap/rape cases as a mechanism to protect against the disparate treatment of similarly situated offenders when sound reason for disparity cannot be found. At the same time, however, we remain mindful that sentencing benchmarks can at most serve as an imprecise starting point for determining appropriate sentences in individual cases. *See Williams II*, 809 P.2d at 933. Sentencing benchmarks place no hard and fast restrictions on the scope of the sentencing court's authority in any given case. *See State v. Wentz*, 805 P.2d 962, 965 (Alaska 1991).

■ As we indicated in *Williams II*, 809 P.2d at 936 n. 5, case law establishes that, for more serious cases involving second-felony offenders who have simultaneously been convicted of sexual assault and kidnapping—

---

2. Referring to *Williams I*, we specifically observed:

> In the present case, Ross' composite sentence of eighty-four years without eligibility for parole vastly exceeds the second felony offender benchmark and, indeed, substantially exceeds even the sentences imposed in some of the cases falling within *Williams'* third benchmark category. Unlike other offenders in *Williams'* third benchmark category, Ross' criminal history—consisting of a misdemeanor conviction for driving while intoxicated and a single prior felony, albeit for a similar crime— is not so extensive as to qualify him as an habitual offender, *see, e.g., Contreras v. State*, 767 P.2d 1169, 1175 (Alaska App.1989), and does not appear to "establish an ingrained, compulsive criminal pattern" of violent mis-

conduct. *Schuenemann v. State*, 781 P.2d 1005, 1009 (Alaska App.1989). And unlike other cases in the third benchmark category, Ross' kidnapping did not entail an extraordinarily lengthy abduction. *See, e.g., Morrell v. State*, 575 P.2d 1200, 1202–03 (Alaska 1978) (virtual enslavement of victim with repeated sexual assaults over eight days).

*Ross*, 836 P.2d at 384.

> We further noted:
>
> Nor does Ross' conduct appear to have exposed his victims to the type of imminent, life-threatening danger that justified an exceptionally severe first-offense sentence of thirty years in *Wilson v. State*, 670 P.2d 1149, 1154 (Alaska App.1983). *See also Williams v. State*, 800 P.2d at 958.

*Ross*, 836 P.2d at 384 n. 5.

*Williams I*'s second benchmark category—a composite sentence exceeding thirty years will seldom be warranted. As a rule, higher composite sentences will be appropriate only in genuinely exceptional cases. *See, e.g., Yearty v. State,* 805 P.2d 987 (Alaska App. 1991) (forty years).

■ The primary factor relied on by the superior court to distinguish Ross from other second-category offenders was that Ross' prior felony conviction involved an incident of first-degree sexual assault—one that was in many respects quite similar to the sexual assaults for which Ross currently stands convicted. We acknowledged the importance of this factor in our original opinion remanding Ross' case, but we expressed skepticism as to whether this factor could in itself justify the significant disparity between Ross' eighty-four-year composite term and the thirty-year composite term indicated by the applicable *Williams I* benchmark:

> It seems to us that the aggravated nature of Ross' conduct and the disturbing similarity of his prior sexual assault make his case at least comparable to, and perhaps more serious than, *Yearty v. State.* We are thus inclined to think that a sentence exceeding *Williams'* second category benchmark of thirty years would be justified here, as was the case in *Yearty.* On the other hand, given Ross' limited criminal history, we are skeptical that a sentence placing Ross in the third benchmark category could be justified[.]

*Ross,* 836 P.2d at 384.

Having reviewed the entire sentencing record and having carefully considered the superior court's findings on remand, we find our initial skepticism unwarranted.

In 1982, Ross was convicted of first-degree sexual assault and received an eight-year sentence for an incident involving conduct that was in many respects disturbingly similar to the conduct involved in his current cases. Not long after being paroled on his previous sexual assault conviction, Ross resumed his pattern of sexual predation. Within a one-week period, he engaged in two incidents of sexual assault against separate victims. In the second of these incidents, Ross kidnapped his victim and held her hostage in his own house for eight hours, subjecting her to repeated acts of sexual assault and to gratuitous and deliberately cruel acts of physical violence that resulted in significant injury. The incident was ended by the fortuitous escape of Ross' victim. Although Ross' conduct involved no imminent threat of death to his victim, the potential for death, serious injury, and prolonged captivity was certainly there.[3]

As Judge Michalski accurately observed, the nature and seriousness of Ross' prior felony conviction, the close factual and temporal relationship between Ross' prior and current offenses, and the escalating seriousness of Ross' behavior—as reflected in the act of kidnapping by which he carried out his most recent sexual assault—are all strongly indicative of Ross' poor prospects for rehabilitation. These same considerations establish the magnitude of danger Ross poses and the need to protect the public by isolating him from society. When Ross' past and current crimes are viewed as a whole, they reveal an alarmingly dangerous pattern of sexual violence. This pattern does not appear to stem from any momentary impulse; rather, it evidently arises from some more urgent and enduring compulsion whose origin is poorly understood and even more poorly controlled by conventionally available means short of incarceration.

The similarity and proximity of Ross' past and current offenses plainly set Ross' case apart from cases within *Williams I*'s second benchmark category. Indeed, Ross' case appears to be unique: we have found no reported cases involving offenders convicted of kidnapping and rape who had previously been convicted of rape. And because Ross is not situated similarly in this respect to offenders in *Williams I*'s second benchmark category, the *Williams I* benchmark itself should not govern Ross' case, for the aim of sentencing benchmarks is not to compel uniformity among disparate offenders.

The pertinent question, then, is whether the unique circumstances that set Ross' case

---

**3.** *See infra* note 5.

apart from the cases included in *Williams I*'s second benchmark category are sufficiently significant to warrant a composite term of eighty-four years. The eighty-four-year term imposed below places Ross squarely within the third benchmark category of *Williams I*, a category encompassing "a handful of decisions in kidnap/rape cases" that approve sentences sufficiently lengthy to keep offenders incarcerated for the remainder of their lives. *Williams I*, 800 P.2d at 960. Our approval of virtual lifetime sentences for offenders in this category has typically been based on our finding of an "ingrained, compulsive criminal pattern." *Schuenemann v. State*, 781 P.2d 1005, 1009 (Alaska App.1989). "Without exception, those cases have involved kidnappings of prolonged duration or offenders whose prior criminal histories established them as persistent, violent criminals." *Williams I*, 800 P.2d at 960.

Ross does not fit neatly into *Williams I*'s third category: his kidnapping was not of "prolonged duration," and his criminal history is not extensive. Yet even when an offender's criminal history is not extensive, the nature of the past and current crimes can be as telling an indicator of an "ingrained, compulsive criminal pattern" as a lengthy history of prior convictions. This point, we think, is aptly demonstrated in *Coleman v. State*, 621 P.2d 869 (Alaska 1980).

Coleman was originally convicted of two counts of rape and one count of robbery. The convictions stemmed from two incidents of sexual assault, the second occurring while Coleman was released on bail for the first. As a result of these convictions, Coleman, then a first offender, was sentenced to serve ten years in prison. *Coleman v. State*, 553 P.2d 40, 52 (Alaska 1976). Two months after being paroled on this sentence, Coleman raped and physically assaulted another victim. For the new offenses, he was subject to a maximum term of sixty years.[4] The sentencing court found Coleman to be a worst offender based on "the proximity of the three criminal episodes in terms of time during

which Coleman was free from prison," *Coleman*, 621 P.2d at 885, and sentenced him to serve forty years for his new offenses, imposing the term consecutively to approximately five years of remaining time that Coleman was required to serve by virtue of the revocation of his parole. *Id.* at 883–84.

On appeal, the supreme court affirmed Coleman's sentence. In particular, the court upheld the trial court's finding that Coleman was a worst offender:

> Behavior showing dangerous propensities which pose a clear risk to the public, the nature and circumstances of a crime, and other factors contained in the presentence report may justify a "worst offender" classification, as well as prior criminal convictions. The extreme danger which Coleman has shown he poses to the rest of society leads us to conclude that the superior court was not clearly mistaken in classifying him as a "worst offender."

*Id.* at 885 (citations omitted).

*Coleman* teaches that even a relatively limited criminal history can justify a worst-offender finding (and, by implication, the conclusion that the offender may properly be sentenced to the statutory maximum term) when a defendant's past and current crimes consist of repeated acts of serious sexual assault that are separated by a substantial period of incarceration but, apart from incarceration, occur in close proximity. Ross fits the *Coleman* criteria. Both Ross and Coleman were subject to sentencing as second felony offenders. Ross, like Coleman, has now been convicted of a total of three episodes of sexual assault involving three victims. Like Coleman, Ross committed these offenses in close proximity to one another in terms of the time he was free from prison. And Ross, like Coleman, has thereby shown himself to be an "extreme danger" to society.

The salient feature distinguishing Ross' case from Coleman's is the significantly greater seriousness of the conduct in Ross' case. Unlike Coleman, Ross' most recent offense consisted not of a single sexual assault but of repeated acts of rape committed

---

4. Coleman was prosecuted as a second-felony offender under former AS 12.55.050(1), a habitual offender statute that subjected a second-felony offender "to twice the longest term prescribed for the felony of which that person is convicted." *Coleman v. State*, 621 P.2d at 884 n. 25.

during a criminal episode that lasted eight hours and involved deliberate cruelty. For this conduct, Ross was convicted of five counts of first-degree sexual assault and of the unclassified felony of kidnapping.[5] Whereas Coleman was subject to a total maximum term of sixty years and received forty, Ross was subject to a total maximum of two hundred fifty-nine years[6] and received eighty-four. In imposing this sentence, Judge Michalski properly found Ross to be an extremely dangerous offender whose prospects for rehabilitation are limited, at best.

■ Given the persistence and proximity of Ross' criminality, the extreme and increasing seriousness of his crimes, and the lack of any clear prospects for his deterrence or rehabilitation, the remote possibility of some future change in Ross' behavior hardly seems to justify the substantial risk of exposing future victims to the same crimes that Ross has now committed on three occasions. The virtual lifetime sentence imposed below was justifiably calculated to assure that Ross will have no future opportunity to commit similar crimes.

Having independently reviewed the entire sentencing record, we cannot say that the sentence imposed below is clearly mistaken.

The sentence is AFFIRMED.

COATS, J., dissents.

MANNHEIMER, J., not participating.

COATS, Judge, dissenting.

I dissent from the court's decision upholding Ross' sentence. Ross is a serious offender and the trial court certainly did not err in imposing a substantial sentence. However, the court was required to impose a sentence that was reasonable in light of sentences other courts have imposed for similar offenders who have committed similar crimes. In our previous decision in *Ross v. State*, 836 P.2d 378 (Alaska App.1992), we pointed out that Ross' sentence was unprecedented:

In the present case, Ross' composite sentence of eighty-four years without eligibility for parole vastly exceeds the second felony offender benchmark and, indeed, substantially exceeds even the sentences imposed in some of the cases falling within *Williams'* third benchmark category. Unlike other offenders in *Williams'* third benchmark category, Ross' criminal history—consisting of a misdemeanor conviction for driving while intoxicated and a single prior felony, albeit for a similar crime—is not so extensive as to qualify him as an habitual offender, *see, e.g., Contreras v. State*, 767 P.2d 1169, 1175 (Alaska App.1989), and does not appear to "establish an ingrained, compulsive criminal pattern" of violent misconduct. *Schuenemann v. State*, 781 P.2d 1005, 1009 (Alaska App.1989). And unlike other cases in the third benchmark category, Ross' kidnapping did not entail an extraordinarily lengthy abduction. *See, e.g., Morrell v. State*, 575 P.2d 1200, 1202–03 (Alaska 1978) (virtual enslavement of victim with repeated sexual assaults over eight days).

Despite the seemingly unprecedented length of the composite term he imposed in

---

5. It is significant that Ross was convicted of kidnapping for conduct going beyond the type of temporary abduction and eventual release that is common among many of the kidnap/rape cases that factored into the *Williams I* benchmark sentences. As we have already observed, Ross held his victim hostage for eight hours and, during this time, subjected her to serious physical and sexual violence. He did not release his victim; rather, she escaped. These circumstances involve the type of potential for death or prolonged captivity that justifies classifying kidnapping as among the most serious of felonies. *See, e.g., Garrison v. State*, 762 P.2d 465, 469–74 (Alaska App.1988) (Singleton, J., concurring). The fact that this potential danger remained unrealized here mitigates Ross' crime to a certain extent; but the scope of mitigation must be tempered by

the recognition that the potential for more serious harm may have gone unrealized in this case only by virtue of S.A.'s escape—an event beyond Ross' control. *See id.* at 472–74 (discussing *Morrell v. State*, 575 P.2d 1200 (Alaska 1978), and *Nylund v. State*, 716 P.2d 387 (Alaska App.1986)). Given these circumstances, a fifty-year kidnapping sentence for a second-felony offender would not have been obviously excessive, even in the absence of multiple sexual assaults.

6. Ross' second-degree sexual assault conviction, for assaulting V.B., was a class B felony and was punishable by a maximum of ten years. Each of the five counts of first-degree sexual assault involving S.A. was punishable by a maximum of thirty years. Ross' kidnapping was punishable by a maximum of ninety-nine years.

this case, Judge Michalski failed to discuss the seriousness of Ross' conduct in relation to other similarly situated offenders. Although the judge gave general consideration to the sentencing criteria specified in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), he made no findings to explain the apparent disparity between Ross' composite sentence and sentences previously given to similarly situated offenders.

It seems to us that the aggravated nature of Ross' conduct and the disturbing similarity of his prior sexual assault make his case at least comparable to, and perhaps more serious than, *Yearty v. State*[, 805 P.2d 987, 996–97 (Alaska App.1991) ]. We are thus inclined to think that a sentence exceeding *Williams'* second category benchmark of thirty years would be justified here, as was the case in *Yearty*. On the other hand, given Ross' limited criminal history, we are skeptical that a sentence placing Ross in the third benchmark category could be justified, particularly in light of the sketchy psychiatric information contained in the sentencing record.

*Ross*, 836 P.2d at 384 (footnotes omitted).

Given Ross' criminal history it is difficult to criticize the sentence the trial court gave

him. This is frequently the case with people who commit serious felony crimes. It is for this reason that we have guidelines: to try to ensure that a defendant receives a sentence that is to some degree comparable to the sentences similar offenders have received. I do not think that Ross' sentence meets this standard of fairness.

I recognize that this is a difficult case. Given Ross' history and current offenses, the trial court could certainly find that Ross was a dangerous offender who was likely to repeat his behavior. In light of this, I believe the court could have imposed a sentence in the range of fifty to sixty years of imprisonment, a sentence well beyond the normal guidelines. However, a sentence in the range of eighty-four years still appears to me, as it did to the court in our prior *Ross* decision, to be "seemingly unprecedented."

I therefore dissent.