Christopher SCHOLES, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10931.

Court of Appeals of Alaska.

April 13, 2012.

David M. Seid, Assistant Public Defender, Juneau, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Angie Kemp, Assistant District Attorney, Juneau, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Christopher Scholes kidnapped a 15–year–old girl as she was walking along a path near a Juneau school. Scholes came up behind the girl and placed her in a choke-hold until she lost consciousness. When the girl regained consciousness and started to scream, Scholes threatened to kill her unless she remained quiet. Scholes then bound the girl with duct tape, carried her to his vehicle, drove her to his home, removed her clothing (by cutting it off with scissors), and proceeded to rape her repeatedly, both with his penis and with a bottle. Following these sexual assaults, Scholes drove the girl back to the school and left her there, blindfolded.

Based on this conduct, Scholes was convicted of kidnapping, second-degree sexual abuse of a minor, and a single count of first-degree sexual assault that encompassed the various acts of sexual penetration that Scholes inflicted on the girl.[1] For these crimes, Scholes received a composite sentence of 40 years and a day, all to serve.

In this appeal, Scholes challenges various rulings that the superior court made in connection with his sentencing. With respect to the sexual assault charge, Scholes argues that the sentencing court committed error by finding two aggravating factors: deliberate cruelty, and conduct among the most serious within the definition of the offense. Scholes also challenges the superior court's refusal to refer Scholes's case to the statewide three-judge sentencing panel (for imposition of a sentence outside the normal constraints of the presumptive sentencing law). Finally, Scholes argues that his composite sentence is excessive.

For the reasons explained here, we uphold the superior court's rulings on these matters, and we further conclude that Scholes's sentence is not excessive.

*Aggravating factor AS 12.55.155(c)(2)—deliberate cruelty*

Scholes was convicted of kidnapping, first-degree sexual assault, and second-degree

---

1. *See Yearty v. State,* 805 P.2d 987, 995 (Alaska App.1991) (holding that when a defendant inflicts distinct types of sexual penetration upon a victim during a single episode of sexual assault, each distinct type of sexual penetration will support a separate count of sexual assault).

sexual abuse of a minor. Kidnapping is not covered by Alaska's presumptive sentencing law,[2] but Scholes's other two offenses are.[3]

For cases where a defendant's sentencing is governed by the presumptive sentencing law, AS 12.55.155(c) contains the list of aggravating factors that, if proved, will authorize a judge to exceed the applicable presumptive sentencing range. See AS 12.55.155(a). Aggravator (c)(2) applies to cases where "the defendant's conduct during the commission of the offense manifested deliberate cruelty to another person". We have interpreted this statutory language as referring to instances where the defendant inflicts pain (whether physical, psychological, or emotional) gratuitously or as an end in itself, as opposed to inflicting pain that is ancillary to the commission of the crime.[4]

The superior court concluded that this aggravator was proved by an incident that occurred during the sexual assault. While the girl was bound hand and foot, Scholes took a bottle of sparkling cider (a bottle approximately the size of a wine bottle) and inserted the neck of the bottle into his victim's vaginal canal. The girl screamed in pain. Scholes asked the girl whether her pain was due to the fact that the neck of the bottle was too wide, or if the top of the bottle was "hitting the back"—i.e., pushing against the girl's cervix at the end of her vaginal canal. When the girl replied that the bottle was hitting her cervix, Scholes removed the bottle, turned it around, and thrust the wider end into his victim's body. As might be imagined, this second penetration also caused the girl considerable pain. To help her endure this pain, Scholes gave the girl a teddy bear to bite down on.

Superior Court Judge Philip M. Pallenberg found that this incident involving the bottle was proof that Scholes gratuitously inflicted pain on his victim, over and above what was ancillary to his commission of rape. Judge Pallenberg noted, in particular, that when Scholes inserted the wide end of the bottle into the girl's vaginal canal, and the girl cried out in pain, "[Scholes's] response was not to

stop causing that pain; it was to give her a teddy bear to bite down on—which meant that he consciously chose to continue inflicting pain".

In his brief to this Court, Scholes argues that the bottle was simply one of the means he employed to sexually penetrate his victim, and that therefore any pain that he inflicted with this bottle was merely ancillary to his commission of the crime of sexual assault. For the reasons expressed by Judge Pallenberg, we disagree with Scholes's characterization of his actions. Based on this record, Judge Pallenberg could reasonably find that Scholes purposely inflicted pain on his victim for its own sake. And based on this finding, we uphold Judge Pallenberg's ruling that the State proved aggravator (c)(2).

*Aggravating factor AS 12.55.155(c)(10)— conduct among the most serious within the definition of the offense*

Aggravator (c)(10) applies to cases where the defendant's conduct was among the most serious within the definition of the offense. The question of whether Scholes's conduct was among the worst instances of kidnapping was not at issue, because sentencing for the offense of kidnapping is not governed by the presumptive sentencing law. However, with respect to the charge of sexual assault, Judge Pallenberg concluded that the facts of Scholes's case showed that his conduct was among the most serious within the definition of that crime:

> The Court: [This case is on] the high end of the scale[.] ... [A] defendant goes out and abducts [a stranger] in a public place, ... and takes them and holds them and sexually assaults them [repeatedly] for a period of time.... One could certainly come up with ... a more serious rape, one where there are more grievous physical injuries [inflicted, or] where the kidnapping lasted longer.... Certainly this is not the most serious rape ever committed. But ... that's not the standard for [this] aggravator. The [question] is: is it *among* the most serious within the definition of

2. See AS 12.55.125(b).

3. See AS 12.55.125(i).

4. *Juneby v. State,* 641 P.2d 823, 840 (Alaska App.1982).

the offense. And I think [that] when one looks at [this] forcible rape and kidnapping of a stranger who is a minor, where the assault is particularly brutal, as I think this one was, [and] where there's the gratuitous infliction of pain and the gratuitous use of violence, and some really brutal and unspeakable threats made, [as well as] multiple acts of penetration, [and] penetration with ... a large object—all of those facts, taken together, ... place this case within ... aggravator [ (c)(10) ].

(When Judge Pallenberg spoke of "brutal and unspeakable threats", he was apparently referring to the evidence that Scholes threatened to kill his victim, to burn her feet, and to insert screws into her body.)

In past cases, we have upheld findings of aggravator (c)(10) based simply on the fact that the defendant was being sentenced for a single count which encompassed conduct that could have supported multiple convictions. *See Pusich v. State,* 907 P.2d 29, 33 (Alaska App.1995) (a single count of manslaughter that encompassed three deaths); *Curl v. State,* 843 P.2d 1244, 1245 (Alaska App.1992) (a single count of sexual abuse that encompassed a series of 20 to 25 incidents of abuse). *See also Monroe v. State,* 752 P.2d 1017, 1021 (Alaska App.1988) (holding that aggravator (c)(10) was supported by the fact that the defendant's act of arson endangered a large number of people, rather than the one person minimally necessary to constitute the offense of first-degree arson).

Here, Scholes engaged in multiple acts of penetration that included penetration of the victim's genitals, anus, and mouth. Each of these modes of penetration could have supported a separate count of sexual assault.[5] Based on this fact alone, Judge Pallenberg might justifiably have found aggravator (c)(10). And as Judge Pallenberg noted, there are other aspects of Scholes's conduct that place his offense among the most serious: the length of the assault, the brutality of the assault (including Scholes's use of the

bottle), and Scholes's threats to kill the victim (as well as his threats to burn her and put screws into her body).

We acknowledge that a portion of Judge Pallenberg's remarks could be interpreted as violating the rule set forth in *Juneby v. State,* 641 P.2d 823, 842–43 (Alaska App.1982), *as modified on rehearing,* 665 P.2d 30, 38 (Alaska App.1983). In *Juneby,* this Court held that a sentencing court should not rely on an aggravating factor to increase a presumptive term of imprisonment if that aggravating factor is based on conduct for which the defendant is being separately punished. Here, when Judge Pallenberg gave his reasons for characterizing Scholes's conduct as among the most serious, he referred to the fact that Scholes kidnapped his victim (conduct that formed the basis of Scholes's separate kidnapping conviction).

But even when we set the kidnapping aside, there is ample justification for classifying Scholes's conduct as among the most serious within the definition of first-degree sexual assault. We therefore uphold Judge Pallenberg's ruling that the State proved aggravator (c)(10).

*The basic procedural facts of Scholes's sentencing*

For the offense of kidnapping, Scholes faced an indeterminate sentencing range of 5 to 99 years' imprisonment.[6] For the offense of first-degree sexual assault, Scholes faced a presumptive sentencing range of 25 to 35 years' imprisonment because (1) he was a first felony offender but (2) he used a dangerous instrument (the bottle) during his commission of the offense.[7] For the offense of second-degree sexual abuse of a minor, Scholes faced a presumptive sentencing range of 5 to 15 years' imprisonment.[8] Because the State proved aggravating factors, Judge Pallenberg was authorized to impose any sentence up to the 99–year maximum

---

5. *See Erickson v. State,* 950 P.2d 580, 587 (Alaska App.1997); *Yearty v. State,* 805 P.2d 987, 995 (Alaska App.1991).

6. *See* AS 12.55.125(b).

7. *See* AS 12.55.125(i)(1)(B).

8. *See* AS 12.55.125(i)(3)(A).

term for both of these sexual offenses.[9] The least severe sentence that Judge Pallenberg could impose was 30 years and one day to serve.

(Judge Pallenberg had no authority to impose less than 25 years' imprisonment to serve for Scholes's sexual assault conviction, because 25 years was the low end of the applicable presumptive range, and Scholes did not prove any mitigating factors. Under AS 12.55.127(c)(2)(B), Judge Pallenberg had to impose at least 5 years of Scholes's kidnapping sentence consecutive to his other sentences, because 5 years is the mandatory minimum penalty for kidnapping.[10] And under AS 12.55.127(c)(2)(F), Judge Pallenberg was required to make at least one day of Scholes's sexual abuse sentence consecutive to Scholes's sentence for sexual assault. Thus, the most lenient sentence that Judge Pallenberg could impose on Scholes was a term of imprisonment of 30 years and one day, all to serve.)

Ultimately, Judge Pallenberg imposed 25 years to serve (40 years with 15 years suspended) for the first-degree sexual assault conviction. For the offense of second-degree sexual abuse of a minor, the judge imposed 13 years with 3 suspended, but he made this sentence concurrent with Scholes's other sentences except for one day to serve. And for the offense of kidnapping, Judge Pallenberg imposed a consecutive sentence of 30 years with 15 years suspended. Thus, Scholes's composite sentence is 40 years and one day to serve—70 years and one day, with 30 years suspended.

*Judge Pallenberg's decision not to refer Scholes's case to the three-judge sentencing panel*

During the sentencing proceedings, Scholes asked Judge Pallenberg to refer his case to the statewide three-judge sentencing panel. Scholes argued that a referral to the three-judge panel was justified on two bases: first, that Scholes had extraordinary pros-

pects for rehabilitation; and second, that the 30-year minimum sentence available to Judge Pallenberg under the presumptive sentencing law was manifestly unjust (*i.e.,* manifestly too harsh).

Judge Pallenberg rejected both of these arguments and declined to send Scholes's case to the three-judge panel.

With regard to the claim that Scholes had extraordinary prospects for rehabilitation, the court received input from several expert witnesses. Scholes presented the testimony of Dr. Mark McClung, a psychiatrist who worked as a consultant with sex offender treatment programs, and in his brief to this Court, Scholes relies primarily on Dr. McClung's testimony.

Dr. McClung testified that he had interviewed and evaluated Scholes, he had spoken to Scholes's former wife, and he had reviewed Scholes's police files and prior psychiatric records. Dr. McClung concluded that Scholes suffered from "type I" bipolar disorder—the more intense form of the disorder, where the person's behavior is characterized by obvious manic episodes.

Dr. McClung believed that Scholes's bipolar disorder was a "primary contributor" to Scholes's commission of the kidnapping and sexual assault, and that Scholes's mental abnormality was probably aggravated by the medications he was taking at the time (steroids and Wellbutrin, an anti-depressant). Dr. McClung explained that people who suffer manic episodes become more impulsive, and that they have impaired judgement. In addition, they sometimes have an atypical degree of "sexual preoccupation".

Dr. McClung noted that Scholes had a history of "sexual compulsivity" involving pornography and internet sexual contact, and the doctor stated that this sexual compulsion might have been another significant contributor to Scholes's criminal actions—although Scholes's sexual compulsion could potentially have been worsened by his bipolar disorder. In addition, Dr. McClung stated that Scholes

---

**9.** *See* AS 12.55.155(a) (the effect of aggravating factors on a judge's sentencing authority), AS 12.55.125(i)(1) (specifying a 99-year maximum sentence for first-degree sexual assault), and AS 12.55.125(i)(3) (specifying a 99-year maximum

sentence for second-degree sexual abuse of a minor).

**10.** *See* AS 12.55.125(b).

had narcissistic personality traits that also could have contributed to his criminal behavior.

Dr. McClung told the court that bipolar disorder was treatable—not curable, but manageable with medication and monitoring. The doctor also testified that Scholes's narcissistic traits could also be treated through therapy.

Based on all this, and given the fact that Scholes lacked any prior history of violence, Dr. McClung concluded that the kidnapping and sexual assault were out of character for Scholes, that Scholes could be rehabilitated, and that (given proper treatment) it was unlikely that Scholes would commit such crimes again.

In his remarks at the conclusion of the sentencing hearing, Judge Pallenberg declared that Dr. McClung's testimony was "articulate and ... largely persuasive". Nevertheless, Judge Pallenberg concluded that the doctor's testimony failed to establish that Scholes had an extraordinary potential for rehabilitation.

Citing this Court's decision in *Beltz v. State*, 980 P.2d 474 (Alaska App.1999), Judge Pallenberg noted that a sentencing court should not find that a defendant has extraordinary potential for rehabilitation unless the court "is reasonably satisfied both that it knows why a particular crime was committed and that the conditions leading to the criminal act will not recur—either because the factors that led the defendant to commit the crime are readily correctable or because the defendant's criminal conduct resulted from unusual environmental stresses unlikely ever to recur." *Beltz*, 980 P.2d at 481.[11]

Judge Pallenberg concluded that this test was not met in Scholes's case because "several factors ... [signaled] caution about Mr. Scholes's prospects for rehabilitation." The judge noted that, about one year before the kidnapping and sexual assault, Scholes was charged with breaking into a house. While this earlier case was pending, Scholes committed another, similar break-in. The judge further noted that there was a "sexual di-

mension" to these break-ins, because Scholes dialed 900 numbers (*i.e.*, telephone pornography services) while he was inside these residences.

Judge Pallenberg further noted that, after this earlier case was resolved and Scholes was ordered to obtain mental health treatment, he failed to do so. The judge acknowledged that Scholes's bipolar disorder may have made it difficult for him to follow through with the court-ordered treatment. However, the judge noted that if this was the case—*i.e.*, "if the disorder itself [impedes] a person from ... following through with treatment for the disorder"—then there was reason to be concerned about Scholes's future behavior.

Judge Pallenberg also noted that Scholes had a "longstanding sexual preoccupation" that apparently predated the onset of his bipolar disorder. This suggested that Scholes had three underlying problems: not just the bipolar disorder, but also the sexual obsession, as well as substance abuse. Judge Pallenberg explained, "Successful rehabilitation is going to require treatment [of] all three of those things. And I think it's always complex and difficult to treat [a] dual or, here, maybe triple diagnosis."

Finally, Judge Pallenberg noted that Scholes's rehabilitation could be impeded by his narcissistic personality traits and by the fact that he claimed to suffer blackouts or gaps in his memory. As the judge explained, blackouts are not normally a feature of bipolar disorder—which suggested that Scholes might have some other psychological condition, "some sort of protective or avoidance mechanism".

Judge Pallenberg stated that Dr. McClung's analysis gave him "some reason to be hopeful" about Scholes's prospects for rehabilitation. But the judge declared that even though there was "reason to be hopeful that Mr. Scholes won't re-offend", Scholes had not demonstrated by clear and convincing evidence that he had extraordinary prospects for rehabilitation. Rather, according to Judge Pallenberg, "there are significant rea-

---

11. Quoting *Lepley v. State*, 807 P.2d 1095, 1100 (Alaska App.1991), which in turn was quoting

*Kirby v. State*, 748 P.2d 757, 766 (Alaska App. 1987).

sons to be cautious about Mr. Scholes's prospects."

■ We have reviewed the record, and we conclude that it supports Judge Pallenberg's decision on this issue.

■ Moreover, even if Scholes had proved that he had extraordinary potential for rehabilitation, Judge Pallenberg was statutorily barred from referring Scholes's case to the three-judge panel on this basis. As we have explained, Judge Pallenberg found that the State had proved aggravators (c)(2) and (c)(10). The proof of either of these two aggravators precluded a referral to the three-judge panel on the basis of extraordinary potential for rehabilitation. Subsection (b) of the statute that governs referrals to the three-judge panel, AS 12.55.165, states that a sentencing judge is prohibited from referring a case to the three-judge panel based on the defendant's potential for rehabilitation if the judge finds "[a] factor in aggravation set out in AS 12.55.155(c)(2), (8), (10), (12), (15), (17), (18)(B), (20), (21), or (28)".

This leaves Scholes's claim that his case should have been referred to the three-judge panel because the 30–year minimum sentence required by Alaska's presumptive sentencing law is manifestly unjust.

When Judge Pallenberg addressed this issue, he acknowledged that he had to sentence Scholes to at least 30 years to serve, primarily because the 2006 legislature enacted drastic increases to the presumptive sentencing ranges for sex offenses. (As we have explained, Scholes faced a presumptive sentencing range of 25 to 35 years for the sexual assault.) Judge Pallenberg also acknowledged that it was "the role of the legislature, and not the courts" to establish penalties for crimes.

The judge stated that he thought Scholes should receive "a very lengthy prison term" for his crime, and that the 30–year minimum

sentence in Scholes's case was not manifestly unjust. Judge Pallenberg did say that, if the matter were entirely up to him, he would make Scholes eligible for discretionary parole if Scholes successfully completed sex offender treatment in prison and if he remained compliant with a treatment and medication regimen for his bipolar disorder. But AS 33.16.090(b)(2) provides that offenders who are serving presumptive terms for sexual felonies are not eligible for discretionary parole.[12]

Under AS 33.16.090(b), only the three-judge panel had the authority to make Scholes eligible for discretionary parole during his sentence. Accordingly, the ultimate question facing Judge Pallenberg was whether it was manifestly unjust to sentence Scholes to 30 years' imprisonment without the possibility of discretionary parole. Judge Pallenberg concluded that this was not manifestly unjust. He declared, "This is exactly the kind of case that the legislature intended to apply the presumptive sentencing ranges to."

(In fact, as we have explained, Judge Pallenberg sentenced Scholes to a significantly greater term of imprisonment—40 years to serve.)

■ In his appellate brief, Scholes asserts that Judge Pallenberg reached the wrong decision, and that the 30–year minimum sentence required by law was manifestly unjust. But Scholes does not actually argue this claim. Instead, in his brief, Scholes argues that his *actual* sentence of 40 years to serve is clearly mistaken. Moreover, Scholes does not mention the issue of discretionary parole eligibility, which (as we have explained) was the only aspect of the sentence that gave Judge Pallenberg pause.

Because Scholes does not argue that even a lesser sentence of 30 years to serve would be clearly mistaken, or that any sentence of 30 years or longer would be manifestly unjust if it did not include eligibility for discre-

---

**12.** This statute reads: "A prisoner [who would otherwise be] eligible [for discretionary parole] under (a) of this section [but] who is sentenced ... to a single sentence within or below a presumptive range set out in AS 12.55.125 ... (i), and [who] has not been allowed by the three-judge panel under AS 12.55.175 to be considered for discretionary parole release, may not be released on discretionary parole until the prisoner has served the term imposed, less good time earned under AS 33.20.010[.]"

tionary parole, we conclude that Scholes has failed to meaningfully brief the argument that Judge Pallenberg should have referred his case to the three-judge panel on the basis that the prescribed minimum sentence was manifestly unjust.

*Is Scholes's sentence of 40 years to serve, with an additional 30 years suspended, clearly mistaken?*

The final issue in this appeal is whether Scholes's composite sentence of 40 years to serve is clearly mistaken.

■ When Judge Pallenberg imposed this sentence, he declared that Scholes's crime was "horrific", and that the primary sentencing concern was the goal of isolation.

> *The Court:* While I think it is true that [Scholes's] bipolar disorder played … a fairly significant role in the commission of this offense, Mr. Scholes's bipolar disorder isn't going to go away tomorrow.... [And] there are thousands of people out there with bipolar disorder who don't kidnap and rape people, and who are compliant with their treatment and don't commit crimes.... [E]ven when people with bipolar disorder aren't compliant with their treatment, most of them don't go out and do things like this. And there's something about Mr. Scholes, when he was noncompliant with treatment, that caused him to do these things. And I think … that makes him a dangerous person.

In his brief to this Court, Scholes notes that his sentence is substantially more severe than the 20–year benchmark ceiling that this Court established in the 1990s for first felony offenders who are convicted of kidnapping and sexual assault. *See Ross v. State*, 877 P.2d 777, 779–780 (Alaska App.1994), explaining *Williams v. State*, 800 P.2d 955, 958–59 (Alaska App.1990), *as modified on reconsideration*, 809 P.2d 931 (Alaska App.1991).

The penalty for kidnapping (5 to 99 years) remains the same as it was in the 1990s. But in 2006, the legislature substantially increased the presumptive penalties for sexual assault. In the 1990s, defendants like Scholes—first felony offenders who committed first-degree sexual assault, and who used a dangerous instrument during the commission of the offense—faced a presumptive term of 10 years' imprisonment, and a maximum term of 40 years.[13] Now, first felony offenders who commit first-degree sexual assault and who use a dangerous instrument face a presumptive range of 25 to 35 years' imprisonment, and a maximum term of 99 years.

As Judge Pallenberg noted during his sentencing remarks, within our system of divided government powers, it is the legislature's role to assess the proper penalty or range of penalties for a particular crime.[14] Now that the legislature has declared that 25 to 35 years is the presumptive sentencing range for defendants in Scholes's circumstances, the 20–year ceiling that this Court established in *Williams* and *Ross* no longer applies.

Scholes argues his criminal behavior was out of character, that his crimes arose from a "perfect storm" of mental illness and extenuating circumstances, and that it was extremely unlikely that Scholes would ever engage in such behavior again. Based on this proposed explanation of his conduct, Scholes argues that a sentence of 40 years to serve is clearly mistaken.

But as we have explained, Judge Pallenberg found this proposed explanation unconvincing. He concluded that some of Scholes's problems were longstanding ones that predated the onset of his bipolar disorder. He noted that Scholes had proved resistant to mental health treatment in the past. And he concluded that Scholes's mental problems entailed more than simply bipolar disorder—because, as the judge noted,

---

13.  Former AS 12.55.125(i)(1)(B) (pre–2006).

14.  The Alaska Supreme Court has consistently held that the power to determine an appropriate punishment for an offense is vested in the legislature. *See, e.g., Rust v. State*, 582 P.2d 134, 136–37 (Alaska 1978); *B.A.M. v. State*, 528 P.2d 437 (Alaska 1974); *Faulkner v. State*, 445 P.2d 815, 818 (Alaska 1968). *See also Dancer v. State*, 715 P.2d 1174, 1179 (Alaska App.1986) (rejecting various constitutional attacks on presumptive sentencing).

there are large numbers of people who suffer from bipolar disorder who do not commit kidnapping and rape.

Scholes's 25–year term of imprisonment for first-degree sexual assault falls at the low end of the applicable presumptive range (25 to 35 years). That is, it is the minimum term of imprisonment that Judge Pallenberg could impose for that crime. And Scholes's 15–year term of imprisonment for kidnapping is unremarkable, given the fact that the sentencing range for that offense is 5 to 99 years. The only real question is whether Judge Pallenberg was clearly mistaken when he imposed these terms of imprisonment consecutively, for a composite sentence of 40 years to serve.

Our review of the record convinces us that, given the facts of Scholes's case, and given the sentencing framework established by the legislature, a composite sentence of 40 years to serve is not clearly mistaken.

*Conclusion*

The judgement of the superior court is AFFIRMED.