Mike **TOTEMOFF** and Henry
**Milette, Appellants,**

v.

**STATE of Alaska, Appellee.**

Nos. A–4276, A–4308.

Court of Appeals of Alaska.

Dec. 23, 1993.

Anne M. Wilkas and Paul E. Malin, Asst. Public Defenders, and John B. Salemi, Public Defender, Anchorage, for appellant Totemoff.

Randall S. Cavanaugh, Anchorage, for appellant Milette.

Jeffrey T. Killip, Asst. Atty. Gen., Office of the Attorney General, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

A jury convicted Mike Totemoff and Henry Milette of unlawfully taking game with the aid of an artificial light (spotlighting), in violation of 5 Alaska Administrative Code (AAC) 92.080(7).[1] Totemoff and Milette appeal, contending that District Court Judge John D. Mason erred by denying their pretrial motions to dismiss and by rejecting their proposed jury instructions. We affirm.

On the night of December 27, 1990, Alaska State Trooper James Cockrell and two other officers were patrolling Prince William Sound when they saw a fast-moving boat shining a spotlight on the beaches of several islands. The officers followed the boat for ten or fifteen minutes until it went into a bay at Naked Island. Cockrell watched through binoculars as the spotlight beam settled on a particular area of land for several minutes. Cockrell saw one of the two people in the boat, Milette, make two trips up onto the beach, disappearing into the trees for a few seconds and then returning to the boat at a slower pace. Then the other person in the boat, Totemoff, went onto the beach; Cockrell saw the spotlight on again for about another minute before it turned off.

Concluding that Totemoff and Milette had likely just unlawfully shot two deer with the aid of a spotlight, Cockrell and the other officers maneuvered their boat into the bay to investigate. They discovered Totemoff and Milette with two freshly gutted deer carcasses on the beach. The officers found three other deer carcasses in Totemoff's and Milette's boat, along with two rifles, a Q-beam hand-held spotlight, and other hunting equipment.

After being charged with unlawfully taking deer by spotlighting, Totemoff and Milette moved to dismiss the charges, contending, among other things, that the state had no jurisdiction to prosecute them. Specifically, Totemoff and Milette claimed that the alleged violations occurred on federal land. They asserted that state jurisdiction had been preempted by the federal government's recent assertion of control over fish and game management on Alaska's federal public lands—a course of action resulting from the state's failure to implement the rural subsistence preference set forth in the Alaska National Interest Lands Conservation Act (ANILCA).[2]

After an evidentiary hearing on Totemoff's and Milette's motions to dismiss, Judge Mason found that the alleged violations had occurred on federal public lands.[3] The judge nevertheless concluded that the state had jurisdiction over the alleged offenses.

■ On appeal, Totemoff and Milette first argue, as they did below, that the state had no jurisdiction to prosecute state hunting violations occurring on federal public lands. To resolve this argument, we must first consider the scope of the state's traditional authority to prosecute fish and game violations occurring on federal public lands; we must then inquire whether and to what extent this

---

1. 5 AAC 92.080(7) provides in part: "The following methods of taking game are prohibited: ... with the aid of ... artificial light...."

2. 16 U.S.C. §§ 3101–3233.

3. On appeal, the state challenges this finding. However, our review of the record convinces us that the finding is supported by the evidence and is not clearly erroneous.

authority has been curtailed by recent federal regulations promulgated under ANILCA.

■■■ As a general proposition, states enjoy broad civil and criminal jurisdiction over federal public lands located within their boundaries. *Kleppe v. New Mexico,* 426 U.S. 529, 543–45, 96 S.Ct. 2285, 2293–95, 49 L.Ed.2d 34, *reh'g denied,* 429 U.S. 873, 97 S.Ct. 189, 50 L.Ed.2d 154 (1976). State jurisdiction must yield in two situations, however: first, when federal law expressly provides for exclusive federal jurisdiction; second, when an actual conflict arises between federal and state laws or regulations. *Id.*

When Alaska became a state, the federal government did not assert exclusive federal jurisdiction over the bulk of federal public lands in the state. Although section 4 of the Alaska Statehood Act[4] provided that lands in Alaska over which the federal government retained ownership would remain "under the absolute jurisdiction and control of the United States," the United States Supreme Court has interpreted this provision of the Act to mean that federal jurisdiction over its lands would remain "undiminished" rather than "exclusive"; the Court has thus read this provision to allow the exercise of concurrent state jurisdiction over federal public lands in Alaska. *See Organized Village of Kake v. Egan,* 369 U.S. 60, 67–71, 82 S.Ct. 562, 566–69, 7 L.Ed.2d 573 (1962). Since passage of the Statehood Act, federal statutes dealing with public lands in Alaska have commonly included provisions specifying that they neither diminish nor enlarge Alaska's authority over fish and game management on federal lands within the state's borders. *See, e.g., Alaska v. Andrus,* 429 F.Supp. 958, 962 (D.Alaska 1977) (quoting 43 U.S.C. § 1732(b)), *aff'd,* 591 F.2d 537 (9th Cir.1979).

ANILCA itself contains such a provision: "Nothing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and game on the public lands except as may be provided in title VIII of this Act, or to amend the Alaska constitution." 16 U.S.C. § 3202(a).[5] This provision makes it clear that, unless prohibited by title VIII of ANILCA, the state was authorized to enforce its fish and game laws against Totemoff and Milette, even though their offenses occurred on federal public lands.[6] We must thus inquire whether title VIII of ANILCA deprived the state of the authority it would otherwise have had.

Title VIII of ANILCA (16 U.S.C. § 3111–3126) requires that fish and game on federal public lands in Alaska be managed in a manner giving preference to "the subsistence way of life."[7] To this end, section 804 of the Act (16 U.S.C. § 3114) establishes a rural subsistence preference to be applied in the allocation of fish and game resources. Section 805 (16 U.S.C. 3115) authorizes the Secretary of the Interior to promulgate regulations governing subsistence use of fish and game on Alaska public lands.

The foregoing provisions plainly indicate that the drafters of ANILCA intended to authorize federal management—and potentially exclusive federal management—of fish and game resources on Alaska's federal public lands. Subsection 805(d) of ANILCA nevertheless specifies that the State of Alaska could continue to exercise full authority over fish and game management, provided that the state adopted laws implementing ANILCA's rural subsistence preference.

Because Alaska did initially attempt to conform its fish and game laws to ANILCA's subsistence requirements, the federal gov-

---

4. 72 Stat. 339, as amended.

5. *See also* 16 U.S.C. § 3202(c) ("The taking of fish and wildlife … shall be carried out in accordance with the provisions of this Act and other applicable State and Federal law.").

6. As we pointed out earlier, even in the absence of an express assertion of exclusive federal jurisdiction, the state would be barred from enforcing state laws on federal public lands if those laws actually conflicted with federal laws. However,

Totemoff and Milette do not contend that 5 AAC 92.080(7), the state spotlighting regulation at issue here, is actually at odds with any federal law or regulation. In fact the state regulation is almost identical to 36 C.F.R. § 242.25(b)(1)(vii), which expressly prohibits taking game for subsistence purposes with the aid of a spotlight.

7. *See generally Bobby v. Alaska,* 718 F.Supp. 764, 766–67 (D.Alaska 1989).

ernment did not immediately promulgate subsistence regulations pertaining to Alaska public lands. Ultimately, however, Alaska's efforts to enact a subsistence preference conforming to the requirements of ANILCA proved unsuccessful: in *McDowell v. State*, 785 P.2d 1 (Alaska 1989), the Alaska Supreme Court declared the preference of rural over non-rural subsistence users a violation of the Alaska Constitution. In 1991, the federal government responded by adopting federal regulations to implement ANILCA's subsistence preference on its public lands in Alaska. *See* 36 C.F.R. § 242.[8]

The precise question we face here is whether and to what extent these federal subsistence regulations precluded the state from continuing to enforce its fish and game laws against Totemoff and Milette for acts occurring on federal public lands. As was made clear in *Kleppe v. New Mexico*, 426 U.S. at 543–45, 96 S.Ct. at 2293–95, the state's authority to enforce its laws against Totemoff and Milette could be abridged in two ways: 1) if the federal government's subsistence regulations purported to assert exclusive jurisdiction over fish and game management, or 2) if those regulations actively conflicted with Alaska law.

Neither circumstance occurs in this case. First, the federal subsistence regulations do not purport to assert exclusive jurisdiction over fish and game management on federal public lands in Alaska. At the time of To-

temoff's and Milette's offenses, former 36 C.F.R. § 242.14 provided:

> State of Alaska fish and wildlife regulations apply to Federal public lands unless the Board finds it necessary to promulgate regulations which augment or super[s]ede State regulations in order to ensure the priority for subsistence use of fish or wildlife on Federal public lands.

*See* 56 Fed.Reg. 29310–01 at *21–*22.[9] This regulation expressly provided for continued application of Alaska fish and game regulations on federal public lands; Alaska was precluded from acting only if it sought to enforce a state regulation that had been "augmented" or "superseded" by a federal subsistence regulation.

Second, there is no actual inconsistency between the state and federal regulations in question here. Totemoff and Milette have cited no federal regulations or statutes that are inconsistent with the state's enforcement of 5 AAC 92.080(7), and we are aware of none. Indeed, 36 C.F.R. § 242.25(b)(1)(vii), which expressly forbids spotlight hunting as a means of "taking wildlife for subsistence," is functionally identical to 5 AAC 92.080(7), thus making it clear that federal and state regulations are entirely compatible.[10]

Because the federal regulatory scheme does not purport to assert exclusive federal jurisdiction over fish and game management and does not conflict with Alaska's spotlighting regulation, we conclude that Judge Mason did not err in denying Totemoff's and

---

**8.** Regulations duplicating these provisions were also promulgated in 50 C.F.R. § 100.

**9.** The current version of this regulation goes beyond the original by making Alaska fish and game regulations applicable to public lands, while simultaneously adopting the state regulations, absent actual inconsistency, as federal regulations. In its current form, 36 C.F.R. § 242.-14(a) (1992) reads: "State fish and game regulations apply to public lands and such laws are hereby adopted and made a part of these regulations to the extent they are not inconsistent with, or superseded by this Part." As written, this regulation effectively permits concurrent federal/state enforcement efforts on federal public lands, except in situations in which specific federal regulations conflict with or supersede corollary state provisions.

**10.** Although Totemoff and Milette do not raise the issue, an argument might be made that the

federal spotlighting regulation superseded the Alaska regulation because, even though consistent, the two regulations addressed the same subject matter. The federal spotlight regulation, however, applies only to subsistence taking (in contrast to the state regulation, which applies to both subsistence and non-subsistence taking). To read the federal regulation as superseding Alaska's broader spotlighting regulation would require us to conclude that the federal regulation intended to condone spotlight hunting on public lands as a general matter, prohibiting it only for subsistence users. Since this intent would plainly conflict with the regulation's underlying purpose of implementing ANILCA's rural subsistence preference, we conclude that the federal spotlighting regulation cannot reasonably be construed as being intended to supersede Alaska's similar, but somewhat broader, provision.

Milette's motions to dismiss the prosecutions on the grounds of preemption.

■ Totemoff and Milette alternatively contend that, even if federal law did not preempt state law in this case, the state spotlighting regulation was invalid because the state promulgated it without taking into account the fact that spotlight hunting is a customary and traditional method of subsistence hunting.

At the trial court level, Totemoff and Milette moved to dismiss on this ground. Judge Mason denied their motions without ruling on the validity of the state regulation, reasoning that the regulation's purported invalidity would not constitute a defense to the charges in this case. See *State v. Eluska*, 724 P.2d 514, 515–16 (Alaska 1986), in which the Alaska Supreme Court declared that a defendant charged with violating a hunting regulation had no right to challenge the regulation on grounds that it was adopted in violation of applicable subsistence laws.

■ On appeal, Totemoff and Milette cite a number of federal cases that, in contrast to *Eluska*, seemingly allow defendants charged with fish and game violations to raise subsistence-based defenses. *See, e.g., United States v. Alexander*, 938 F.2d 942 (9th Cir. 1991); *Bobby v. Alaska*, 718 F.Supp. 764, 778–79 (D.Alaska 1989). Totemoff and Milette suggest that these federal decisions should be read to control over *Eluska*. This suggestion is plainly wrong, however, since no federal court other than the United States Supreme Court can control the decisions of state courts, even on questions of federal law. *Matter of F.P.*, 843 P.2d 1214, 1215 n. 1 (Alaska 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2441, 124 L.Ed.2d 659 (1993).

Totemoff and Milette also suggest that, despite *Eluska*, a subsistence-based challenge should have been allowed in their case because their offenses occurred on federal public lands. Totemoff and Milette appear to reason that, since they committed the offenses on federal land and might have been prosecuted under federal law, they should be entitled to raise in state court any defense they would have been entitled to assert had they been prosecuted federally.

Totemoff and Milette cite no authority to support this curious blend of federal and state law, which appears to us to mix jurisdictional apples and procedural oranges. Even assuming their legal theory might have merit in some circumstances, it would plainly be inapplicable in this case, since spotlight hunting is illegal under federal law as well as state law. Because federal law expressly prohibits spotlighting as a means of subsistence taking, Totemoff and Milette would not have been entitled to a subsistence-based defense in federal court had they been prosecuted under federal law.

■ Finally, Totemoff and Milette contend that Judge Mason erred in rejecting instructions telling the jury that unanimity was required on the issue of which deer Totemoff shot and which deer Milette shot and on the issue of whether Totemoff and Milette acted as principals or accomplices.

We find no merit to this argument. Our cases have held that, when two or more discrete acts, each potentially amounting to a crime, are encompassed in a single charge, the jury must be unanimous in deciding the act upon which it determines guilt. *See Nunn v. State*, 845 P.2d 435, 443–44 (Alaska App.1993); *Covington v. State*, 703 P.2d 436, 440–41 (Alaska App.1985), *modified*, 711 P.2d 1183, 1184–85 (Alaska App.1985). We have never intimated, however, that a jury must agree whether a defendant acted as a principal or as an accomplice when proof would allow conviction under either theory. Existing case law indicates the contrary. *See Hansen v. State*, 845 P.2d 449, 451–52 (Alaska App.1993); *Knutson v. State*, 736 P.2d 775, 779–80 (Alaska App.1987).

In this case, it was sufficient that the jury find beyond a reasonable doubt that both Totemoff and Milette participated jointly in the endeavor of shooting deer with the aid of a hand-held spotlight. As a matter of law, both men could be held accountable for their own acts or as accomplices. *See* AS 11.16.-100. The jury was not required to be unanimous as to the precise theory upon which it returned its guilty verdicts. *State v. James*, 698 P.2d 1161 (Alaska 1985).

We AFFIRM the convictions.