STATE of Alaska, Petitioner,

v.

Sababu HODARI, Respondent.

No. S–8569.

Supreme Court of Alaska.

March 3, 2000.

W.H. Hawley, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

James Wendt, Anchorage, for Respondent.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

Sababu O. Hodari was convicted of two counts of sexual assault in the first degree and one count each of robbery in the first degree and assault in the second degree. The trial court sentenced him to a composite sentence of fifty-five years to serve. Hodari appealed his sentence as excessive and the court of appeals remanded his case to the trial court to impose a sentence not to exceed forty years to serve.[1] The state petitioned and we granted review. Because the trial court's original sentence was not clearly mistaken, we reverse the court of appeals.

### II. FACTS AND PROCEEDINGS

In the early morning of April 12, 1995, Hodari and three accomplices forced their way into a home in search of money. While there they committed a number of crimes: the four men raped and brutalized the mother, raped and brutalized her eighteen-year-old daughter who was eight and one-half months pregnant, and beat her fourteen-year old son and forced him to watch the atrocities committed against his mother and sister. In addition to being repeatedly raped, both the mother and daughter were made to perform fellatio on the intruders and each had a pistol forced into her vagina. Hodari forced a pistol into the pregnant daughter's vagina and he threatened to shoot the unborn child.

The four intruders took more than $7,000 in cash, jewelry valued at over $10,000, a stereo, and car tire rims. The interior of the house was left looking "like a tornado had hit it," with broken furniture strewn about and blood splattered on the walls.

In his twenty-three years Hodari had committed a long list of crimes. Prior to these acts Hodari had a "significant juvenile record" with the offenses including theft, burglary, and assault. As an adult he had two felony convictions for misconduct involving a controlled substance and numerous misdemeanor convictions, including misconduct involving a controlled substance and assault. However, because Hodari had not been sentenced on the second felony when he attacked the family, he was considered a second felony offender for presumptive sentencing purposes.[2]

Hodari had a "terrible record on probation," with numerous misdemeanor convictions while on probation, and he committed the present offenses while on probation.[3] The trial court concluded, and the court of appeals agreed, that "it's pretty clear [Hodari is] not going to do anything he doesn't want to do, probation or no probation, parole or no parole, court orders or no court orders."[4] Hodari had continued his refusal to abide by any rules by accumulating a remarkable record of non-compliance with prison regulations.[5]

Hodari pled nolo contendere to two counts of sexual assault in the first degree, an unclassified felony,[6] and one count each of robbery in the first degree, a class A felony,[7] and assault in the second degree, a class B felony.[8]

1. *Hodari v. State,* 954 P.2d 1048, 1052 (Alaska App.1998).

2. *See Sawyer v. State,* 663 P.2d 230, 231–32 (Alaska App.1983).

3. *Hodari,* 954 P.2d at 1050.

4. *Id.*

5. *Id.*

6. *See* AS 11.41.410.

7. *See* AS 11.41.500.

8. *See* AS 11.41.210.

Judge Elaine Andrews sentenced Hodari to a fifty-five year composite sentence comprised of: (1) twenty-five years for each count of sexual assault in the first degree, with the terms to run consecutively; (2) fifteen years for robbery in the first degree, with the term to run concurrently; (3) five years for assault in the second degree, with the term to run consecutively.

Hodari appealed his sentence as excessive. The court of appeals agreed and remanded the case to the trial court with directions to impose a sentence not to exceed forty years of imprisonment. The court reasoned that relative to other similar cases "[h]is case fits within the cases where offenders have received a maximum sentence of forty years of imprisonment. We therefore conclude that a sentence of greater than forty years of imprisonment is excessive."[9]

We granted the state's petition for hearing.

## III. DISCUSSION

### A. Standard of Review

 "Clearly mistaken" is the standard of review that we employ when reviewing sentencing decisions of a trial court.[10] Likewise it is the standard of review that the court of appeals employs when it reviews a trial court's sentencing decision.[11] Accordingly, we give no deference to the court of appeals's conclusions when we grant a petition for review.

While we utilize the "clearly mistaken" standard of review, that standard should not be confused with the "abuse of discretion" standard. As we said in McClain v. State,[12] in describing the "clearly mistaken" and "zone of reasonableness" tests and distinguishing them from the "abuse of discretion" standard:

Implementation of these two formulations ["clearly mistaken" and "zone of reasonableness"] reveals a similar analytical framework which accounts for their combined use in some cases. Analytically, the clearly mistaken test implies a permissible range of reasonable sentences which a reviewing court, after an independent review of the record, will not modify. The zone of reasonableness merely describes that range of reasonable sentences which after an independent review of the record will not be modified by the reviewing court.

The type of analysis involved in both of these formulations should not be confused with the abuse of discretion test. In the abuse of discretion test the reviewing court will sustain the lower court's sentence merely if some of the evidence supports the sentencing court's determination. An independent examination of the entire record is not a part of this test. Because of the limited review inherent in the abuse of discretion test, this court in Galaktionoff v. State, 486 P.2d 919, 923 (Alaska 1971), rejected its application to sentence appeals.[13]

 The court of appeals has correctly analyzed the "clearly mistaken" standard and determined that it is a deferential standard of review:

[I]t gives considerable leeway to individual sentencing judges. The "clearly mistaken" test is founded on two concepts: first, that reasonable judges, confronted with identical facts, can and will differ on what constitutes an appropriate sentence; second, that society is willing to accept these sentencing discrepancies, so long as a judge's sentencing decision falls within "a permissible range of reasonable sentences."[14]

We stated in State v. Wentz[15] that "[t]his 'range of reasonableness,' . . . should be determined not by imposition of an artificial

---

**9.** 954 P.2d at 1052.

**10.** See McClain v. State, 519 P.2d 811, 813–14 (Alaska 1974).

**11.** See State v. Lupro, 630 P.2d 18, 21 n. 9 (Alaska App.1981).

**12.** 519 P.2d at 813–14.

**13.** Id.

**14.** Erickson v. State, 950 P.2d 580, 586 (Alaska App.1997) (citing State v. Wentz, 805 P.2d 962, 965 (Alaska 1991) (quoting McClain v. State, 519 P.2d 811, 813 (Alaska 1974))).

**15.** 805 P.2d 962 (Alaska 1991).

ceiling which limits a large class of offenses to the lower end of the sentencing spectrum, but, rather, by an examination of the particular facts of the individual case in light of the *total range of sentences authorized by the legislature for the particular offense.*" [16]

## B. Was the Sentence Imposed by the Superior Court Clearly Mistaken?

### 1. Statutory law

#### a. Authorized sentences

The maximum sentences for Hodari's crimes are as follows: (1) thirty years for each count of first degree sexual assault, or a total of sixty years; [17] (2) twenty years for one count of first degree robbery; [18] (3) ten years for one count of second degree assault. [19] In sum, the maximum Hodari could have been sentenced to is ninety years.

■ Alaska utilizes "presumptive sentencing." [20] The presumptive terms set out in the statute establish the appropriate sentence in most cases. [21] The legislature has said that "[a] presumptive sentence is a legislative determination of the term of imprisonment *the average defendant convicted of an offense should be sentenced to*, absent the preśence of legislatively prescribed factors in aggravation or mitigation or extraordinary circumstances." [22]

■ Since Hodari had a prior felony conviction, his presumptive sentence is as follows: (1) fifteen years for the first count of first degree sexual assault, with at least some portion of an additional fifteen-year sentence for the second count to be consecutive; [23] (2) at least some part of ten years for one count of first degree robbery to be consecutive; [24] and (3) at least some part of four years for one count of second degree assault to be consecutive. [25] In sum, under presumptive sentencing, without accounting for aggravating factors, Hodari theoretically could have received a sentence of up to forty-four years. Because Hodari's crimes included first degree sexual assault and first degree robbery, there is a "preference" for consecutive rather than concurrent sentences. [26]

#### b. Aggravating factors

■ A court may increase or decrease a presumptive sentence if there are mitigating or aggravating factors. [27] Judge Andrews found that the following aggravating factors [28] were proven:

1. Hodari's crime falls within the "most serious conduct" category. [29]

2. He committed multiple acts on multiple victims. [30]

3. He was the leader of a group of three or more persons who participated in the offense. [31]

4. The crimes were accompanied by exceptional gratuitous violence. [32]

16. *Id.* at 965 (emphasis in original).

17. *See* AS 12.55.125(i).

18. *See* AS 12.55.125(c).

19. *See* AS 12.55.125(d).

20. *See* AS 12.55.155.

21. *See Juneby v. State*, 641 P.2d 823, 833 (Alaska App.1982).

22. Commentary on the Alaska Revised Criminal Code, Senate Journal Supplement No. 47 at 153, 1978 Senate Journal 1399, quoted in *Juneby v. State*, 641 P.2d at 833 (emphasis in quotation, not in original).

23. *See* AS 12.55.125(i)(3); AS 12.55.025(g), (h).

24. *See* AS 12.55.125(c)(3); AS 12.55.025(g), (h).

25. *See* AS 12.55.125(d)(1); AS 12.55.025(g), (h).

26. *See State v. Andrews* 707 P.2d 900, 909 (Alaska App.1985), *aff'd* 723 P.2d 85 (Alaska 1986) (applying AS 12.55.025(g)).

27. *See* AS 12.55.155.

28. The court of appeals did not take exception to any of the aggravators found by the superior court.

29. *See* AS 12.55.155(c)(10).

30. *See* AS 12.55.155(c)(6), (9).

31. *See* AS 12.55.155(c)(3).

32. *See* AS 12.55.155(c)(1), (2), and (4).

5. His victims were very vulnerable.[33]

6. He had numerous misdemeanor convictions as an adult.[34]

7. He forced entry into a home in the middle of the night.[35]

8. He had a "terrible record on probation" with probation revocations and dirty urine analyses.

9. He actually had committed two felonies prior to this crime, but since he had not been convicted of the second felony before this crime it could not be considered for presumptive sentencing purposes.

10. He had a "significant juvenile record."

11. He had no verifiable employment and a "miserable work history."

12. He had received no alcohol or drug treatment.

13. He had a poor record while incarcerated.

As a result of the number and quality of the aggravators established by the evidence, as well as the facts of the crimes themselves, Judge Andrews found Hodari's record qualified him as a "dangerous offender." Judge Andrews's assessment of his extreme dangerousness is evidenced by the court's remark: "this court's sentence will not put Mr. Hodari under correctional supervision for the rest of his life because I can't do it because it's not authorized."

**33.** *See* AS 12.55.155(c)(5).

**34.** *See* AS 12.55.155(c)(21).

**35.** This and the remaining factors set out here are non-statutory aggravating circumstances deemed relevant by Judge Andrews; along with the statutory aggravating factors they justified imposing an exceptional sentence.

**36.** 800 P.2d 955 (Alaska App.1990) (*Williams I*) modified on reconsideration, 809 P.2d 931 (Alaska App.1991) (*Williams II*).

**37.** Judge Andrews recognized that Hodari was not convicted of kidnapping, but she found that Hodari had committed a "technical kidnapping" "in the restraint that he exercised over the vic-

## 2. *Case law*

In *Williams v. State* [36] (*Williams I*) the court of appeals established "benchmarks" for sentencing in sexual assault and kidnapping [37] cases. The court of appeals created three sentencing benchmark categories: the first category for first offenders, the second for defendants with at least one felony conviction but with insufficient criminal history to be considered "dangerous offenders," and the third for "cases [that] involved kidnapping of prolonged duration or offenders whose prior criminal histories established them as persistent, violent criminals." [38] These categories were created to promote the twin sentencing goals of uniformity of sentencing and the elimination of unjustified disparity.[39] In creating the benchmarks the court looked to the "sentences received by similarly situated offenders for similar misconduct." [40]

On review, we remanded the case to the court of appeals for reconsideration in light of our opinion in *State v. Wentz.*[41] In *Wentz*, we emphasized the individualized nature of sentencing and the difficulties inherent in rigid sentencing categories. We recognized that the range of potential sentences between the maximum sentence provided by the law and the presumptive sentence was "wide." [42] We noted that "[t]hose in the upper end of the spectrum should, of course, be reserved for more serious offenses and offenders, while those in the lower end are appropriate for less grave criminal offenders and criminal conduct." [43] We then expressed our reservations about rigid benchmarks:

tims' movements." 954 P.2d at 1050. The court of appeals concurred with this analysis. *Id.* & n. 3 (citing *Williams v. State,* 800 P.2d 955 (Alaska App.1990)).

**38.** 800 P.2d at 959–60.

**39.** *Id.* at 957–58.

**40.** *Id.* at 957.

**41.** 805 P.2d 962 (Alaska 1991).

**42.** *Id.* at 966.

**43.** *Id.*

Whether a particular offense is sufficiently serious to justify placing it in the upper rather than lower end of the sentencing range, however, cannot be determined with mathematical certainty. Such questions are not easily resolved by resort to "bright line" rules or pronouncements concerning the "correct" sentence to be applied under varying factual circumstances. For example, it cannot be stated categorically that a felony assault committed by an offender with a long string of prior misdemeanor assaults is necessarily less serious than a felony assault committed by an offender with a single prior felony conviction. Such questions must be answered by reference to the particular facts of the individual case, and are therefore matters properly left to the sound discretion of the sentencing judge.[44]

On remand, the court of appeals in *Williams II* clarified its intended use of benchmarks in sentence review:

> Our benchmarks in *Williams* [I] and other cases are not intended to be inflexible rules confining the permissible range of sentencing in a given case; rather, they are meant to act as historically-based starting points for individualized analysis in each case: ...
>
> [W]e have never attempted to create sentencing benchmarks based on our abstract notions of what a typical sentence for a given offense ought to be.[45]

The court of appeals's clarification was well-taken, given this court's explicit reliance in *Wentz* on scholarly commentary which exposed the danger of over-reliance on appellate review of sentences to establish rigid sentencing parameters for trial courts:

> There are drawbacks ... to relying too heavily on appellate review to articulate sentencing principles and to fine-tune sentences. Appellate review by its very nature is backward-looking. It is the proper role of the appellate court to examine what has occurred in a specific case, and to pass

on the propriety of the result in that case only. It is generally accepted that an appellate court is effective only when it decides cases based on the factual record before it and only after the record in that case has been completely developed. As a rule, it cannot and should not anticipate what other factual situations might arise in the future, nor should it fashion rules prospectively.[46]

Accordingly, the court of appeals in *Williams II* made clear that the proper use of benchmarks was as "starting points" in the appellate review of sentences, not as "hard and fast limits," nor as rigid rules which "can only be deviated from when certain specific, limited exceptions are established." [47]

### 3. The court of appeals misapplied controlling law.

■ The court of appeals acknowledged that Judge Andrews had identified multiple factors which distinguished Hodari's situation from Williams's:

> Judge Andrews gave several reasons why she found that the facts of Hodari's case deserved a more severe sentence than the sentence which Williams received. She found that Hodari was a leader of the group. He had been the instigator of the offense and had directed the others during the offense. Williams had acted alone. She noted that Hodari had committed a burglary by forcibly entering a home in the middle of the night; Williams had not committed a burglary. Hodari, unlike Williams, used a weapon. She found that the facts of the kidnapping offense in both cases were similar. Hodari had committed a technical kidnapping and Williams had committed a minimal kidnapping offense. She found that Hodari had engaged in "exceptional gratuitous violence" to the victims and their property; Williams had not engaged in gratuitous violence. She found that Hodari had a more serious criminal record than Williams. She found that Ho-

---

44. *Id.*

45. 809 P.2d at 933 (citations omitted).

46. 805 P.2d at 967 (quoting Susanne DiPietro, *The Development of Appellate Sentencing Law in Alaska,* 7 Alaska L.Rev. 265, 296 (1990)).

47. 809 P.2d at 933.

dari, unlike Williams, was a "dangerous offender".... [48]

Moreover, the court of appeals found persuasive the trial court's analysis "that Hodari's case is more aggravated ... and deserving of a more severe sentence." [49] Yet the court of appeals disapproved of the trial court's fifty-five year sentence by saying "we have approved composite terms of forty years or more only for violent crimes committed by offenders with backgrounds that included habitual criminality or repeated acts of criminal violence." [50]

This is the kind of formulaic "benchmark" sentencing that we rejected in *Wentz*. It is out of step with both *Wentz* and *Williams II;* by pronouncing "no more than forty years," the court of appeals has overlooked our discussion of this subject in *Wentz*, (a case which is not mentioned in the *Hodari* decision), and the "historical starting point" language of *Williams II*. More, the decision of the court of appeals ignores a trio of cases, two decided since *Williams II*, in which the court of appeals itself upheld sentences substantially in excess of forty years in similar circumstances: *Adams v. State*,[51] *Ross v. State*,[52] and *Schuenemann v. State*.[53] Finally, the holding of the court of appeals pays little or no deference to the statutory range of permissible sentences. The maximum sentence Hodari could have received under the relevant statutes was ninety years and his composite presumptive sentence, if entirely consecutive sentences were applied, with no aggravating factors, was forty-four years. And yet, the court of appeals held that even with all of the aggravating factors present Hodari's composite sentence should be four years less than his potential presumptive one. A review of the superior court's approach shows why that court's decision was not clearly mistaken.

**48.** 954 P.2d at 1051.

**49.** 954 P.2d at 1051–52.

**50.** *Id.* at 1052 (citations and internal quotation marks omitted).

**51.** 927 P.2d 751 (Alaska App.1996).

**52.** 877 P.2d 777 (Alaska App.1994).

4. *Judge Andrews was not clearly mistaken in sentencing Hodari to a composite sentence of fifty-five years.*

■ Using prior cases as a starting point, Judge Andrews extensively compared Williams's crimes to Hodari's. As noted above, she found that Hodari's case was significantly more aggravated than Williams's. Judge Andrews then went on to compare Hodari to the defendant in *Schuenemann v. State*.[54] In that case the court of appeals upheld a composite sentence of sixty-nine years for a second felony offender convicted of five counts of first degree sexual assault, two counts of first degree attempted sexual assault, and three counts of first degree burglary. Judge Andrews found that Hodari's case was not as aggravated as Schuenemann's because Schuenemann had more counts of sexual assault and had spent "significantly more time in prison" than had Hodari. Based on this analysis Judge Andrews concluded that she was authorized to sentence Hodari to more than thirty years in prison but should impose a sentence less than sixty-nine.

We next look to *Ross* and *Adams*, in which composite sentences for rape/kidnap offenders in excess of forty years were approved. In *Adams* the court of appeals upheld a composite sentence of eighty years with twenty years suspended for a third-felony defendant who was convicted of one count each of first degree sexual assault and kidnapping.[55] In *Ross* the court of appeals upheld a composite sentence of eighty-four years for a defendant with one prior felony.[56] Ross had been convicted of one count of kidnapping, five counts of first-degree sexual assault, and one count of second-degree sexual assault.

The *Ross* court used the following framework:

**53.** 781 P.2d 1005 (Alaska App.1989).

**54.** *Id.*

**55.** 927 P.2d at 759–61.

**56.** 877 P.2d at 781–83.

[W]e use the *Williams [I]* benchmarks for kidnap/rape cases as a mechanism to protect against the disparate treatment of similarly situated offenders when sound reason for disparity cannot be found. At the same time, however, we remain mindful that sentencing benchmarks can at most serve as *an imprecise starting point* for determining appropriate sentences in individual cases. Sentencing benchmarks place no hard and fast restrictions on the scope of the sentencing court's authority in any given case.[57]

The *Ross* court went on to modify appropriately the third benchmark sentencing category. Where it had previously been limited to those offenders with extensive criminal history or whose kidnapping was prolonged in duration, *Ross* and *Adams* added as exceptional cases those offenders without extensive criminal histories if "the nature of [the offender's] past and present crimes" can be used as a "telling [ ] indicator of an ingrained compulsive criminal pattern."[58]

█ Hodari's case easily satisfies this test, showing in totality "an ingrained compulsive criminal pattern" in his behaviors. Multiple factors converge in this single case to show that Hodari is an ingrained and compulsive offender. Although he is younger than any of the other defendants who received a composite sentence of greater than forty years, this convergence of factors supports the trial court's imposition of a sentence of fifty-five years. His long criminal record—juvenile, misdemeanor, and felony—combined with his inability to control his conduct, even while on probation for felony (and other) offenses, and even while incarcerated, suggest a compulsive criminal disposition.[59] In addition, his lack of any verifiable employment and his "miserable work history" suggest a lack of alternatives to crime.[60] To make matters worse, his failure to obtain drug and alcohol treatment, and his probation revocations based on failed urinalysis tests—that is, his substance abuse prob-

lems—lend further support to the conclusion that his condition is ingrained. More importantly, his leadership role in the crimes, the commission of multiple acts on multiple victims, the vulnerability of the victims, and the "most serious conduct within the category" designation of his crimes, all point to the heightened seriousness of Hodari's role in these events. Finally, and most importantly, the horrific nature of his crimes shows an exceptionally malignant disposition suggestive of an "ingrained, compulsive criminal pattern." Hodari's case presents a truly exceptional confluence of factors, both personal to Hodari and applicable to the circumstances of his crime, that lead us to conclude that Judge Andrews's sentencing decision was not clearly mistaken.

## IV. CONCLUSION

The court of appeals erred in relying on the bright line rules established in *Williams I*, which this court implicitly rejected in *Wentz* and the court of appeals appropriately disavowed in *Williams II*. Benchmarks are not to be used as inflexible rules but rather as historically-based starting points for analysis in individual cases. Judge Andrews appropriately considered prior cases involving similar offenders and offenses, and, using the *Williams II* benchmark as a starting point, appropriately fashioned a sentence for Hodari. Because her sentencing decision was not clearly mistaken, we REVERSE the decision of the court of appeals and REMAND with instructions that it reinstate the sentence imposed by the superior court.

---

57. *Id.* at 780 (emphasis added, citations omitted).

58. *Id.* at 782.

59. We stress that a sentencing court, and a reviewing court, must consider the totality of all

factors which bear on the final determination of whether a defendant exhibits "an ingrained compulsive criminal pattern."

60. *See* note 59.