NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| EDWARD GAYLORD BYFORD JR., | Court of Appeals Nos. A-11123 & A-11133 |
| Appellant, | Trial Court No. 3KN-09-1800 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2458 — June 26, 2015 |

Appeal from the Superior Court, Third Judicial District, Kenai, Peter G. Ashman, Judge.

Appearances: Sharon Barr, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

---

[*]   Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

A jury found Edward Gaylord Byford Jr. guilty of three offenses: scheme to defraud, first-degree theft (by deception), and deceptive business practices. [1] The superior court merged these three verdicts into one conviction (for scheme to defraud), and the court then sentenced Byford to 6 years' imprisonment with 3 years suspended.

In this appeal, Byford argues that there was insufficient evidence to support the jury's verdict on the charge of deceptive business practices. Byford also challenges the jury's verdict on the scheme to defraud charge. The statute defining this crime encompasses (1) schemes to defraud five or more persons and (2) schemes to fraudulently obtain $10,000 or more. Byford's trial judge told the jurors that they did not have to be unanimous as to which of these theories the State had proved, and Byford contends that this was error. For the reasons explained in this opinion, we conclude that there is no merit to these claims.

Byford also challenges his sentence. First, he contends that the superior court improperly found two aggravating factors: that Byford's conduct was among the most serious encompassed by the charging statutes, and that Byford's conduct was designed to obtain substantial financial gain while running only a slight risk of prosecution. Second, he contends that his sentence — 3 years to serve — is excessive. For the reasons explained in this opinion, we uphold Byford's sentence.

In addition, the State has filed a cross-appeal, challenging the superior court's decision to merge the three jury verdicts into a single conviction. For the reasons explained here, we agree with the State that Byford should have received a separate conviction and sentence for the crime of deceptive business practices.

---

[1] AS 11.46.600(a), AS 11.46.120(a), and AS 11.46.710(a), respectively.

*Underlying facts*

Byford was charged with scheme to defraud, and a related count of first-degree theft by deception, for defrauding nine people over the course of two and a half years (between October 2004 and February 2007) — by promising to build log homes for these people, and by asking them to pay him a substantial portion of the money up front, but then never building the houses, and never refunding the money. All told, Byford's victims paid him hundreds of thousands of dollars for buildings that never materialized.

Byford was also charged with a separate count of deceptive business practices. This charge was based on the allegation that, in 2009, Byford established and maintained a website under the name of his company, "Prefab Log Homes". This website advertised Byford as a builder of log homes, and it displayed photographs of log cabins that he purportedly had built. However, these cabins had in fact been built by other people — not Byford or his company.

*The sufficiency of the evidence to support the jury's verdict on the deceptive business practices charge*

Byford contends that the evidence presented at his trial was insufficient to support the jury's finding that he was guilty of the deceptive business practices charge. Byford concedes that his company's website was deceptive — that it would lead people to falsely believe that Byford's company had built the log cabins depicted in the photographs. But Byford argues that the evidence showed that the deceptive website was set up by his girlfriend (whom he employed as his bookkeeper). Byford contends that the State failed to show that he personally participated in establishing the website, or that he personally condoned the website's contents.

When a defendant challenges the sufficiency of the evidence to support a criminal conviction, this Court assesses the evidence (and all reasonable inferences to be drawn from it) in the light most favorable to the jury's verdict, and we then determine whether this evidence would be sufficient to convince reasonable jurors that the State had proved the charge beyond a reasonable doubt. [2]

Here, the evidence showed that Byford was the president of Prefab Log Homes, and that the website in question falsely purported to display examples of cabins built by Prefab Log Homes.

According to the evidence, two people worked directly on the website: Seth Crosby, a web developer and designer, and Lorraine Woitel, who was both Byford's girlfriend and the bookkeeper of Prefab Log Homes.

Crosby testified that when he designed the website for Prefab Log Homes, he worked primarily with Woitel, and it was Woitel who gave him the photographs that were used on the website.

Crosby recalled that he participated in three to five meetings with Woitel, and that Byford was present for two of these meetings. With regard to these two meetings where Byford was present, Crosby testified that Byford actively participated in one of them. With regard to the other meeting, Crosby acknowledged that Byford did not take an active role in the discussion, but Byford sat near to Crosby and Woitel (at a second desk), and he could hear their entire discussion. It was during this second meeting that Crosby and Woitel actively discussed the content to be included on the website.

From this evidence, the jurors could reasonably infer that even if Byford did not actively participate in the second meeting, he was following the discussion, he

---

[2]  *Moore v. State*, 298 P.3d 209, 217 (Alaska App. 2013); *Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012).

was aware of the photographs that Woitel provided to Crosby for the website, and he was aware that he had not built the cabins depicted in those photographs.

These inferences were circumstantially bolstered by other evidence in the case — evidence showing that, on at least four occasions, Byford personally engaged in similar face-to-face deception of customers. According to this evidence, Byford had prospective customers go and view log buildings in the area — to convince these people to sign contracts with Byford and give him partial payments up front. Byford falsely claimed to have built these log houses when, in fact, the houses were built by other contractors.

We acknowledge that the evidence was conflicting on the question of who was responsible for the content of the website. In particular, Woitel took the stand and claimed total responsibility for the website's contents. But the question is whether the jury's verdict is adequately supported if the evidence is viewed in the light most favorable to that verdict. In other words, could the jurors reasonably reject Woitel's exculpatory testimony? Given the evidentiary record as a whole, we conclude that reasonable jurors could reject this testimony and could find, instead, that Byford was aware of the website's deceptive contents.

For these reasons, we conclude that the evidence is sufficient to support the jury's verdict on the deceptive business practices charge.

*Whether the jurors were required to reach unanimous agreement as to whether Byford's scheme was designed (1) to defraud five or more people or (2) to fraudulently obtain $10,000 or more*

The offense of scheme to defraud is defined in AS 11.46.600(a). Under this statute, a person commits the crime of scheme to defraud if the person "engages in conduct constituting a scheme":

(1) to defraud five or more persons or to obtain property or services from five or more persons by false or fraudulent pretense, representation, or promise ... ; or

(2) to defraud one or more persons of $10,000 or to obtain $10,000 or more from one or more persons by false or fraudulent pretense, representation, or promise ...

and if the person "obtains property or services in accordance with the scheme".

When Byford's trial judge instructed the jury on the elements of this crime, the judge told the jurors that they did not have to reach unanimous agreement as to whether the State had proved element (1) or element (2). Byford's attorney did not object to the judge's instruction, but on appeal Byford argues that this instruction constituted plain error because it allegedly deprived Byford of his right to a unanimous verdict. More specifically, Byford argues that this instruction allowed the jury to convict him even if they did not unanimously agree on the particular scheme that Byford engaged in.

As Byford notes in his brief, there is case law holding that a verdict is flawed if, in a case involving evidence of two different fraudulent schemes, the jury is not required to reach unanimous agreement as to which of these schemes the defendant engaged in or pursued. *See United States v. Mastelotto*, 717 F.2d 1238, 1247-1250 (9th Cir. 1983).

But the jury instruction in the present case did not say that it was unnecessary for the jurors to agree on Byford's *conduct*. Rather (as we are about to explain), the challenged instruction told the jurors that they did not have to agree on Byford's *intention*.

The charging statute, AS 11.46.600(a), requires the State to prove that the defendant engaged in a scheme, and that the scheme was designed "to defraud five or

more persons", or "to obtain property or services from five or more persons by false or fraudulent pretense", or "to defraud one or more persons of $10,000", or "to obtain $10,000 or more from one or more persons by false or fraudulent pretense".

As this Court explained in *Knix v. State*, 922 P.2d 913 (Alaska App. 1996), even though the scheme to defraud statute seemingly does not specify a culpable mental state, the statute requires proof of the defendant's purpose or design, because the statute employs the words "scheme" and "defraud" in their ordinary meaning:

> As defined by the dictionary, [these] words describe conduct [that is] directed toward a specific objective. ... [T]he statutory phrase, "scheme to defraud," ... unmistakably refers to purposive conduct — a scheme — that is intended to achieve a specific result — a fraud. The notion of intentional conduct is thus intrinsic in the ordinary meaning of the term "scheme to defraud."

*Knix*, 922 P.2d at 920.

It is important to note that the statutory language about defrauding five or more people, or about obtaining $10,000 or more, does not define the *results* of the scheme. That is, the State is not required to prove that the defendant actually succeeded in defrauding five or more people, or actually obtained $10,000 or more by fraud. Rather, the State must show that the defendant's scheme was *designed* to achieve these ends (and that the defendant was able to obtain at least some "property or services in accordance with the scheme").

The legislative commentary to AS 11.46.600 — which is found in 1978 Senate Journal Supp. 47 (June 12), pp. 57-58 — clarifies that "[i]t is not an element of [this] crime that a specific dollar loss was suffered by a victim of the scheme. [Rather, the] defendant must obtain property or services from at least one of his victims in accordance with the scheme."

– 7 – 2458

Alaska law requires jury unanimity regarding the act that forms the basis of a criminal conviction. Jurors must "agree upon just what the defendant did".[3] Thus, "when two or more discrete acts, each potentially amounting to a crime, are encompassed in a single charge, the jury must be unanimous in deciding the act upon which it determines [the defendant's] guilt."[4]

But in cases where "only one criminal act [is] alleged and only one incident [is] involved", the jury "need not be unanimous concerning the precise theory of the defendant's guilt."[5] Thus, in *Ward v. State*, 758 P.2d 87, 92 (Alaska 1988), the supreme court held that jurors need not be unanimous as to whether the defendant drove a motor vehicle while impaired or, instead, while their blood alcohol level was above the legal limit. Similarly, in *Totemoff v. State*, 866 P.2d 125, 129 (Alaska App. 1993),[6] this Court held that jurors need not be unanimous as to whether a defendant is guilty because of their own personal actions or because of their complicity in other people's actions. And in *Ragsdale v. State*, 23 P.3d 653, 659 (Alaska App. 2001), this Court held that a defendant could lawfully be convicted of sexual assault even though the jurors were not unanimous as to whether the defendant knew that the victim (1) was incapacitated or (2) was unaware that sexual penetration was occurring.

The crime at issue in Byford's case, scheme to defraud, is defined as a course of conduct that is accompanied by one or more of a specified list of purposes or designs. The purposes or designs listed in the statute are not mutually exclusive. Nor

---

[3]   *Khan v. State*, 278 P.3d 893, 898 (Alaska 2012), quoting *State v. James*, 698 P.2d 1161, 1167 (Alaska 1985).

[4]   *Totemoff v. State*, 866 P.2d 125, 129 (Alaska App. 1993).

[5]   *Andrew v. State*, 237 P.3d 1027, 1040-41 (Alaska App. 2010), quoting *State v. James*, 698 P.2d at 1165-66. *See also Nunn v. State*, 845 P.2d 435, 443-44 (Alaska App. 1993).

[6]   *Reversed on other grounds* in *Totemoff v. State*, 905 P.2d 954 (Alaska 1995).

do they define a defendant's conduct; rather, they define the aim(s) of the defendant's conduct. Given the applicable case law on this issue, we hold that the jurors did not need to unanimously agree as to which of these purposes or designs had been proved.

*The superior court's decision to merge the three jury verdicts into a single conviction*

Before we reach the sentencing issues that Byford raises, we must first address the issue raised by the State in its cross-appeal.

As we noted earlier in this opinion, the jury returned guilty verdicts on all three of the charges against Byford: the class B felony of scheme to defraud, [7] the class B felony of first-degree theft (under a theory of theft by deception), [8] and the class C felony of deceptive business practices. (This last offense was raised to a class C felony because Byford used the Internet to commit the offense. [9])

The superior court ruled that, under Alaska's law relating to double jeopardy, these three offenses had to merge into a single conviction, so the court entered judgement against Byford for only one class B felony: scheme to defraud.

This Court has already held that when a defendant is convicted of scheme to defraud and theft by deception based on the same course of conduct, the convictions must merge. *Knix v. State*, 922 P.2d 913, 923 (Alaska App. 1996). And the State concedes that Byford's convictions for scheme to defraud and theft must merge. But the State argues that Byford should have received a separate conviction for deceptive

---

[7] AS 11.46.600(b).

[8] AS 11.46.120(b).

[9] AS 11.46.710(c) – (d).

business practices, and that the superior court committed error by merging this conviction with the other two.

The State makes two arguments in support of its position that Byford should receive a separate conviction for the crime of deceptive business practices.

First, the State notes that Byford was convicted of the felony level of deceptive business practices, as defined in AS 11.46.710(d). To convict a defendant under this subsection, the State not only has to prove that the defendant made deceptive statements to promote the sale of goods or services, but also that the defendant used the Internet or some other computer network to communicate these deceptive statements to the public. Because the statute requires proof of this additional element (use of the Internet), the State therefore argues that this felony level of deceptive business practices protects a distinct societal interest from the crimes of scheme to defraud or theft by deception, and that Byford should accordingly receive a separate conviction and sentence for establishing his deceptive website.

Second, the State notes that Byford's prosecution for scheme to defraud and theft by deception was based on a course of conduct that he engaged in between October 2004 and February 2007, but Byford's conviction for deceptive business practices was based on the website that he established in 2009. Thus, the conduct involved in the deceptive business practices charge took place years after the conduct involved in the scheme to defraud and theft by deception charges. And as the State notes, even when a defendant engages in multiple instances of exactly the same crime, the defendant can properly receive separate convictions if those instances are sufficiently distinct. [10]

_____

[10] *Joseph v. State*, 293 P.3d 488, 492 (Alaska App. 2012). See also *Wiglesworth v. State*, 249 P.3d 321, 329-331 (Alaska App. 2011), for our discussion of the related question of when separate convictions for possession of a drug or weapon are, or are not, allowed.

We need not reach the State's first argument (the argument that Byford's use of the Internet implicates a societal interest that is sufficiently distinct to support a separate conviction) because we agree with the State's second argument. Given the facts of Byford's case, the establishment of the deceptive website in 2009 is factually distinct enough from the earlier crimes to support a separate conviction.

The superior court's ruling on this issue — the ruling that Byford's conviction for deceptive business practices had to merge with his other two convictions — appears to have been premised on a misunderstanding of the law. The court declared that the deceptive business practices verdict had to merge with the other two verdicts because Byford's use of the website was the "same course of conduct" as his scheme to defraud:

> *The Court*: [These verdicts] merge because [the] posting [of] the [deceptive] pictures on the website [was] part and parcel of what led each of the victims [of the scheme to defraud] into Mr. Byford's trap. ... [It was] all the same conduct, ... the same course of conduct. It's the same type of conduct, done with the same mental state, for the same purpose.

Byford's establishment of the deceptive website may have been "the same *type* of conduct", but it was not "the same *course* of conduct". As a factual matter, it was undisputed that Byford's establishment of the deceptive website took place in 2009 — two years after the completion of the scheme to defraud charged in the indictment (a scheme that Byford engaged in between October 2004 and February 2007).

It is true, as the superior court remarked, that Byford's establishment of the deceptive website appears to be the same "type of conduct" as the earlier scheme to defraud. Indeed, as the superior court also remarked, one might reasonably infer that Byford's establishment of this website was the inauguration of yet another scheme to

defraud — a scheme "done with the same mental state, [and] for the same purpose" as the earlier one.

But even though a defendant may characteristically and repeatedly engage in schemes to defraud, our scheme to defraud statute does not define the crime in terms of a person's criminal tendencies or aspirations. Rather, the statute punishes the act of engaging in an identifiable scheme to defraud.

In the present case, the sentencing judge was justified in concluding that Byford's establishment of the deceptive website showed that he was getting ready to defraud more people, and to defraud them in the same manner as he had done from 2004 to 2007. But as a legal matter, this does not mean that the two schemes must be treated as one.

Any fraud that Byford achieved through the deceptive website would have been substantially separated in time from the scheme to defraud that was charged in the indictment. And, except for Byford's use of the same *modus operandi* (showing potential customers examples of log buildings that were not his), there was no evidence that Byford's establishment of the deceptive website in 2009 was a continuation of the scheme to defraud charged in the indictment — a scheme that Byford pursued from late 2004 to early 2007. We therefore conclude that the superior court should have entered a separate conviction for the deceptive business practices charge.

In his brief to this Court, Byford argues that even if the double jeopardy clause does not *require* a merger of these charges, "this does not mean that they cannot merge". Byford suggests that the sentencing judge could still merge these convictions if, as a matter of sentencing discretion, the judge concluded that this was a fair outcome.

We expressly rejected this approach to double jeopardy law in *Erickson v. State*, 950 P.2d 580 (Alaska App. 1997). As we explained in *Erickson*, double jeopardy rulings like the one in Byford's case are not exercises of sentencing discretion; rather,

they are rulings of law — legal decisions as to how many convictions are supported by the given facts. *Id.* at 585-87. As a consequence, if a sentencing judge wrongly merges two convictions, the State is entitled to relief in the nature of mandamus — *i.e.*, an order directing the trial court to reinstate the merged conviction, and to sentence the defendant for this separate offense. *State v. Occhipinti*, 562 P.2d 348, 349-351 (Alaska 1977); *Hunter v. State*, 182 P.3d 1146, 1154 (Alaska App. 2008).

We therefore direct the superior court to enter a separate conviction on the charge of deceptive business practices, and to sentence Byford for this offense.

*Byford's challenge to the two aggravating factors found by the sentencing judge, and why we conclude that Byford's challenge is moot*

At the sentencing proceedings in this case, the State proposed two aggravating factors: first, that Byford's conduct was among the most serious within the definition of the offense, [11] and second, that Byford's conduct was designed to obtain substantial pecuniary gain, while his risk of criminal prosecution was slight. [12]

Byford agreed to have the sentencing judge sit as the trier of fact on these proposed aggravators, and the judge concluded that the State had proved both of them. The judge then sentenced Byford to 6 years' imprisonment with 3 years suspended (*i.e.*, 3 years to serve) for the crime of scheme to defraud.

On appeal, Byford argues that he must be re-sentenced because the facts of his case do not support the judge's findings with respect to the two aggravating factors. But Byford's contention is moot — because Byford was sentenced under the pre-March 2005 version of Alaska's sentencing laws.

---

[11]  AS 12.55.155(c)(10).

[12]  AS 12.55.155(c)(16).

As we have explained, Byford's scheme to defraud spanned two and a half years, from October 2004 to February 2007. While Byford was pursuing this scheme to defraud — in March 2005 — the Alaska Legislature enacted a major revision of our state's sentencing laws. [13]

Because the law changed in the middle of Byford's criminal scheme, Byford's case presented a question as to whether the former law or the current law should govern his sentencing. And it was not clear whether one version of the law was more favorable to Byford than the other.

Byford was a first felony offender being sentenced for a class B felony. Under Alaska's current sentencing laws, Byford would face a presumptive sentencing range of 1 to 3 years' imprisonment. [14] This means that, unless the State proved aggravating factors, Byford's total sentence — the combination of his time to serve plus his suspended jail time — could not exceed 3 years. [15] On the other hand, under current law, Byford would have to receive at least 1 year to serve unless he proved mitigating factors.

The pre-March 2005 sentencing laws were less favorable to Byford in some respects, but more favorable to him in others. This is because scheme to defraud is a class B felony — and because, under the pre-March 2005 version of the presumptive sentencing laws, the rules of presumptive sentencing did not apply to first felony offenders convicted of class B and class C felonies.

In particular, the pre-March 2005 version of AS 12.55.125(d) — the statute that governs sentencing for class B felonies — specified a presumptive term of 4 years'

---

[13] *See* SLA 2005, ch. 2. Pursuant to §§ 33 and 34 of this session law, the revised presumptive sentencing statutes took effect on March 23, 2005.

[14] AS 12.55.125(d)(1).

[15] AS 12.55.125(n).

imprisonment for *second* felony offenders, but there was no presumptive term for first felony offenders. Instead, the sentencing of first felony offenders was governed by former AS 12.55.125(k). [16] This statute provided that a first felony offender convicted of a class B felony could receive any sentence up to the 10-year maximum term of imprisonment for class B felonies, [17] but with the proviso that the "time-to-serve" component of the sentence could not exceed 4 years (the presumptive term that applied to second felony offenders) unless the State proved aggravating factors or extraordinary circumstances. [18]

Thus, under the pre-March 2005 sentencing laws, Byford could receive a sentence of up to 10 years' imprisonment with 6 years suspended — 4 years to serve — even in the absence of aggravating factors. In this respect, the pre-March 2005 law was less favorable to Byford.

But the pre-March 2005 law also allowed Byford's sentencing judge to give him less than 1 year's imprisonment — indeed, to give him no jail time at all — even if Byford failed to prove mitigating factors. And because whatever sentence Byford received would not be "presumptive", Byford would not face any special restriction on his ability to seek release on discretionary parole. [19] So in these respects, the pre-March 2005 law was more favorable to Byford.

At Byford's sentencing hearing, the prosecutor noted that the sentencing laws had changed in the middle of Byford's scheme to defraud, and the prosecutor told the court that the State was willing to stipulate that Byford's case was governed by the

---

[16] Repealed by SLA 2005, ch. 2, § 32.

[17] *See* AS 12.55.125(d).

[18] *See Surrells v. State*, 151 P.3d 483, 484 (Alaska App. 2006).

[19] *See* AS 33.16.090.

0- to 4-year non-presumptive sentencing range of the pre-March 2005 law, rather than the 1- to 3-year presumptive sentencing range of the current law. Byford's attorney took no position as to which law applied.

Although the sentencing judge never expressly ruled on this issue, it is clear from the judge's remarks, and from the written judgement, that the judge sentenced Byford under the pre-March 2005 law. When the judge addressed Byford at the sentencing hearing, the judge told him that he faced a sentencing range of 0 to 4 years. And the judge never referred to Byford's sentence as "presumptive" — either in his oral pronouncement of the sentence or in the written judgement that he issued later.

On appeal, Byford does not challenge the judge's decision to apply the pre-March 2005 version of the sentencing statutes. We will therefore assume, for purposes of this case, that it was proper to apply the pre-March 2005 law.

And under that pre-March 2005 law — in particular, under former AS 12.55.125(k) — any question as to whether the State proved aggravating factors is moot. Byford received a sentence of 6 years' imprisonment with 3 years suspended, and that sentence is lawful under the former law even in the absence of aggravating factors, because the "time to serve" component of Byford's sentence is less than 4 years. [20]

*Byford's argument that his sentence is excessive*

Although we are remanding Byford's case to the superior court for the entry of a separate conviction and sentence on the deceptive business practices charge, Byford's new composite sentence can not exceed his current sentence of 6 years with 3 years suspended.

---

[20]   *See Surrells v. State*, 151 P.3d 483, 485 (Alaska App. 2006).

As we have explained, we agree with the State that the superior court was legally required to enter two separate felony convictions against Byford: one based on the jury's findings that Byford was guilty of scheme to defraud and theft by deception, and the other based on the jury's finding that Byford was guilty of deceptive business practices. But even though the superior court must now enter another conviction against Byford and impose a separate sentence for this conviction, the double jeopardy clause limits the superior court's authority to modify Byford's overall sentence. Byford's sentence can be modified, but only to the extent necessary to correct the illegality. [21]

Here, even though the superior court must impose a separate sentence for the crime of deceptive business practices, our law allows the court to make that new sentence entirely concurrent with Byford's existing sentence for scheme to defraud. [22] Alternatively, the court could impose a consecutive sentence for the deceptive business practices conviction but reduce Byford's sentence for scheme to defraud, so that Byford's new composite sentence does not exceed his original sentence. [23]

Because these alternatives are available to the superior court, the superior court is not allowed to increase Byford's sentence. We therefore must address Byford's claim that his sentence of 6 years' imprisonment with 3 years suspended is improperly severe.

---

[21] *Smith v. State*, 892 P.2d 202, 203-04 (Alaska App. 1995); *Christensen v. State*, 844 P.2d 557, 558 (Alaska App. 1993); *Curtis v. State*, 831 P.2d 359, 360 (Alaska App. 1992); *Love v. State*, 799 P.2d 1343, 1346-47 (Alaska App. 1990); *Joseph v. State*, 712 P.2d 904, 905-06 (Alaska App. 1986).

[22] *See Love v. State*, 799 P.2d 1343, 1346 (Alaska App. 1990).

[23] *See Joseph v. State*, 712 P.2d 904, 905-06 (Alaska App. 1986).

When a defendant challenges a sentence imposed for two or more criminal convictions, the appellate court will assess whether the combined sentence is clearly mistaken, given the whole of the defendant's conduct and history. [24]

At Byford's sentencing, the judge spoke at length, and he thoroughly addressed the sentencing goals codified in AS 12.55.005. The judge concluded that Byford's sentence had to emphasize the goals of general deterrence, community condemnation, and the reaffirmation of societal values.

The judge acknowledged that some construction contractors might cheat by "cutting corners" in their work, but the judge declared that Byford's case was significantly different — both because of the large scale of his thefts, and also because, during the course of the scheme, he used the false trust that he created with earlier clients to ensnare new clients. The judge also found that Byford took money for projects "absolutely knowing ... that he couldn't fulfill the contracts. He didn't order enough materials to complete the projects [and] he didn't have enough time to fulfill the contracts."

The judge also focused on the "bald-faced shamelessness of [Byford's] behavior", as well as the fact that Byford's risk of being criminally prosecuted (as opposed to being sued civilly) was "almost zero".

And the judge found that Byford's prospects for rehabilitation were negligible — because Byford, "at least in the context of business dealings, is essentially amoral." The judge noted that Byford had not provided his victims with any form of restitution — "not a penny."

For all these reasons, the judge concluded that "significant jail time" was necessary to deter Byford and others like him, to satisfy the goal of community

---

[24] *Brown v. State*, 12 P.3d 201, 210 (Alaska App. 2000); *Comegys v. State*, 747 P.2d 554, 558-59 (Alaska App. 1987).

condemnation, and to reaffirm societal norms. As we have explained, the judge sentenced Byford to 6 years' imprisonment with 3 years suspended — *i.e.*, 3 years to serve.

The question on appeal is whether this sentence is "clearly mistaken" — whether it falls outside "[the] permissible range of reasonable sentences", given the entirety of Byford's conduct and background. [25]

Byford's active term of imprisonment — 3 years to serve — is one year less than the 4-year presumptive term provided for second felony offenders under the pre-March 2005 law, and it is well within the sentencing range for a first felony offender convicted of a class B felony under that former law. Considering the number of Byford's victims, the amount of money he obtained through his scheme to defraud, Byford's lack of remorse, and the fact that, two years later, Byford set up a deceptive website that was apparently the prelude to a new round of fraud, we uphold the superior court's sentencing decision.

### Conclusion

We conclude that there was sufficient evidence to support the jury's verdict finding Byford guilty of deceptive business practices. We further conclude that the jury was correctly instructed regarding the charge of scheme to defraud. We hold that the trial court committed error when it merged these two offenses. Byford must be separately convicted and sentenced for the offense of deceptive business practices, but the superior court may not increase Byford's overall sentence.

---

[25] *State v. Hodari*, 996 P.2d 1230, 1232 (Alaska 2000), quoting *McClain v. State*, 519 P.2d 811, 813 (Alaska 1974).

Byford's contentions regarding the State's proposed aggravating factors are moot. And Byford's sentence of 6 years' imprisonment with 3 years suspended is not clearly mistaken.

For these reasons, we AFFIRM the judgement of the superior court, except that this judgement must be amended to reflect a separate conviction and sentence for the crime of deceptive business practices.

We do not retain jurisdiction of this case.